[Crim. No. 4969. Third Dist. Oct. 10, 1968.]

In re ANETTA R. PEELER on Habeas Corpus.

---

*Assigned by the Chairman of the Judicial Council.

S. C. Braughton and Paul N. Halvonik for Petitioner.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and James T. McNally, Deputy Attorneys General, for Respondent.

PIERCE, P. J.—Petitioner had been granted probation after a plea of guilty on a charge of possession of marijuana (Health & Saf. Code, § 11530). Thereafter she requested modification of the conditions of probation. The basis of her petition was that she had married one James Peeler after her plea but before sentence and that certain conditions of the probation were inimical to her status as a married woman. The petition was heard and resulted in a modification of probation by the imposition of conditions more stringent than those originally imposed.

Petitioner filed with this court a petition for habeas corpus seeking inter alia a vacation and nullification of conditions of probation which effectually denied her the right of cohabitation with her husband.

We granted an order to show cause limited to test the validity of two of the attacked conditions with a stay of the enforcement thereof. The two conditions were: (1) Condition Two: that for the first year of a three-year period of probation she must live with her parents, and (2) Condition Four: that defendant was not to associate with any known *or reputed* user or possessor of marijuana, dangerous drugs, or other narcotics.

For reasons stated below we have concluded that the writ must be denied and the stay heretofore ordered, vacated.

## Facts Summary

On February 28, 1968, petitioner was accused by indictment of the sale of marijuana (Health & Safety Code § 11531). On April 26, 1968, she pleaded guilty of the lesser included offense of possession of marijuana. The matter was referred to the probation officer. His report was filed May 6, 1968. A copy was in the possession of petitioner before May 9, 1968. Summarized, the report shows: Petitioner, 20 years of age, is one of three children of parents who have been married 23 years and who have resided in Butte County nearly all of that time. They have lived at their present address in Oroville for 15 years. Petitioner's father is a prosperous logging contractor. The home life has been normal. Petitioner had been educated through one semester of junior college. At the time of her offense she was attending a beauty college. She told the probation officer she had started using marijuana approximately one year before her arrest, had used it off and on since then but did not think she was addicted to its use. The police report of the offense for which she had been arrested differed in one respect quite markedly from petitioner's statement to the probation officer. According to the police officer an undercover agent had been told by an informant that he (the informant) had been solicited by petitioner to purchase a "lid" of marijuana. The informant and the agent called at a residence in a Butte County community near Oroville. Three girls, of whom petitioner was one, were present. The girls told the two men they used marijuana, methedrine *and had access to heroin*. Petitioner was a principal spokesman for the trio and an active participant in the sale which followed. A purchase of marijuana by the men for $10 (paid to petitioner) was negotiated and later consummated. The marijuana had been hidden in a field. Petitioner's story was that the "informant" mentioned was an old friend of hers whom she had not seen recently. Her version was that he had asked *her* if she could get marijuana for him. She had phoned a friend who had told her where marijuana was "stashed." Asked regarding her motivation she said: "I did it because he (the informant) was my friend and I figured he'd do the same thing for me if I needed it." *Significantly she admitted having used marijuana since her arrest*. Nevertheless she told the probation officer she would "have [no] difficulty in refraining from the use of marijuana in the future, or from associating with others who do, were she to be granted probation."

The report stated: "A strong tendency to minimize and rationalize her involvement with narcotics was noted." The probation officer had been informed by the police "that a strong possibility exists that she may have been 'dealing' in marijuana since her release. . . ." The officer hesitantly recommended probation with a disciplinary period in the county jail. The report recommended the conditions which were subsequently imposed.

As to petitioner's marital status, then the report states: "The defendant is not now, and never has been, married, but is in the process of firming up plans to do so at this time. She indicates that she plans to marry . . . [a young man] presently in the United States Army, . . ." this summer. Testimony in the record taken at a subsequent probation hearing will clarify that statement. The soldier referred to was a boy with whom petitioner had been "dating" since she was 15. He had, during late March and April—after petitioner's arrest—been home on leave. The couple during this period had become engaged to be married. Before and after the period of the soldier's leave, petitioner had also been keeping company with one James Peeler. According to defendant, she had decided after the serviceman's departure that she preferred Peeler to him.

On May 9, 1968, she and Peeler were married in Reno. The marriage was in the morning. The couple returned the same day.

On May 10, the hearing was held on the probation officer's report. Petitioner was represented by an attorney. Before the hearing she asked her attorney what he thought the court might feel regarding her possible marriage to James Peeler. The attorney told her that he believed that Peeler was involved in narcotics and that mention of his name at the hearing would jeopardize her chances for probation. Petitioner did not inform the attorney that she and Peeler had already been married.

The fact of the marriage or even of the acquaintanceship between petitioner and Peeler was not mentioned at the hearing. The court granted probation on the terms recommended. Condition One was that petitioner would be incarcerated in the Butte County jail for 30 days. When she reported to serve her period in jail she was released on a "work furlough program" in order that she might continue attendance at Oroville Beauty College. She completed her period in custody on

June 2, 1968. (She had been given credit for time served before sentence.)

On June 3d petitioner appeared with James Peeler before the probation officer who was informed of the May 9th marriage. She petitioned for the elimination of Conditions Two and Four and of a third condition which required her to be at home by midnight during the first year of probation. Hearing on this petition was held June 14, 1968. Another probation report had been prepared which was read at that hearing. It appeared therein that Peeler was then under arrest for the sale of marijuana and dangerous drugs and for keeping a place where marijuana was sold. The evaluation in the report was that petitioner had "accepted probation under false pretenses, and that she further wilfully failed to disclose the fact of her marriage for almost a month after its occurrence." In addition to receipt of the report evidence was taken at the hearing. Both petitioner and her mother testified. That testimony disclosed the facts we have related above regarding the engagement between petitioner and the soldier. As regards Peeler petitioner testified that she had made the decision to marry Peeler on May 6th, that she had been in love with him before the serviceman's return on leave but she had not realized a definite preference until then. She had never intended permanently to withhold information of the marriage from the probation officer but had not revealed it after her conversation with her attorney, being fearful that it would affect the terms of her probation. She denied ever having used narcotics with Peeler and denied any knowledge that Peeler had been in any way identified with narcotics until she had been so informed by her attorney.

At the time of his arrest James Peeler, 23 years old, was a student at Chico State College. On May 17, 1968, a complaint was filed against him and another. The complaint was in four counts (1) on April 12, 1968, of maintaining a place for the sale, giving away and using marijuana, (2) on March 30, 1968, of furnishing marijuana, (3) on April 2, 1968, of furnishing a dangerous drug, and (4) on April 12, 1968, of furnishing marijuana. The charges against Peeler were pending when the modification of probation conditions with which we deal here was made. We notice judicially that they are still pending.

At the hearing, statements by the court indicate his skepticism as to the truth of petitioner's testimony that she was unaware, prior to her marriage, of the fact that Peeler was

identified with trafficking in narcotics. The judge considered a revocation of probation. He stated: "Under all of these circumstances, there is a total lack of responsibility, total rejection of authority, and, also, a total circumventing of authority." He added later: ". . . [I]t seems to me we may just as well begin an intensive rehabilitative program under stronger auspices than the County Probation Department can offer."

After argument, however, and upon recommendation by the probation officer, the court did not revoke probation. Instead, it modified the previous order by imposing additional conditions: (1) that petitioner spend an additional 60 days in jail; and (2) it amended the condition theretofore imposed requiring her to eschew association with known users of marijuana and dangerous drugs by adding to this interdiction any association with "reputed" users of such drugs. This of course was, effectually, a command that she live apart from her husband. The accusation of trafficking in narcotics does not mean Peeler is guilty. He has not yet been tried. The presumption of innocence, on the other hand, does not spare an accused from acquiring a bad "reputation." Petitioner's then attorney had known of Peeler's reputation even before Peeler had been charged. From the evidence then before the court it reasonably inferred that Peeler was a "reputed" user of marijuana and other dangerous drugs.

SUMMARY OF PUBLIC POLICY RE PROBATION

It is stated in 2 Witkin, California Crimes, Punishment for Crime, section 1048, page 992:

" 'An integral and important part of the penological plan of California is *the discretionary retention in the trial court of jurisdiction over the defendant and the cause of action against him in a large area of crimes by virtue of the probation* procedures.' (*People* v. *Banks* (1959) 53 Cal.2d 370, 383 [1 Cal.Rptr. 669, 348 P.2d 102]) . . .

"The purpose of probation is rehabilitation; and the considerations which influence the granting of it are stated only in the most general terms: 'If the court shall determine that there are circumstances in mitigation of punishment prescribed by law, or that the ends of justice would be subserved by granting probation to the defendant, that court shall have power in its discretion to place the defendant on probation. . . .' (P.C., 1203.) (See also *People* v. *Johnson* (1955) 134 C.A.2d 140, 143 [285 P.2d 74] . . . ; *People* v. *Cortez* (1962)

199 C.A.2d 839, 844, 19 C.R. 50 ['Probation is granted to the end that a defendant may rehabilitate himself, make a responsible citizen out of himself and be obedient to the law'].''

Our courts have repeatedly said that probation is not a right but an act of "grace and clemency." ▉ In types of crimes where probation is permitted by statute the judge is vested with a wide discretion, which will not be disturbed in the absence of abuse. (*People* v. *Hainline* (1933) 219 Cal. 532, 534 [28 P.2d 16]; *People* v. *Mancha* (1963) 213 Cal.App.2d 590, 592 [29 Cal.Rptr. 72].) The court also has a broad discretion to impose conditions. (13 Stan. L. Rev. 340, 341; Pen. Code, § 1203.1.) When a court finds that its order has been violated it may revoke probation. (Pen. Code, § 1203.2[1] and § 1203.2a.) The judge, notwithstanding a wide discretion vested in him, must consider each application for probation upon its merits. (*People* v. *Rojas* (1962) 57 Cal.2d 676 [21 Cal.Rptr. 564, 371 P.2d 300].) "Moreover, the determination to grant or deny probation is also one in which the state, as well as the defendants, has an interest within the statutory declarations." (*Id.* p. 683.) Although the discretion of the trial court in granting probation, and imposing the conditions of probation and in revoking or modifying those conditions (see below) is wide, its powers are not boundless. Conditions imposed must be reasonable and relevant to the offense for which probation is being granted. There is an excelllent dissertation on this in *People* v. *Dominguez* (1967) 256 Cal.App. 2d 623 [64 Cal.Rptr. 290], where a condition that an unmarried woman convicted of robbery should not become pregnant was held irrelevant and therefore void. In *People* v. *Dominguez* (at p. 627 of 256 Cal.App.2d). the case of *People* v. *Blankenship* (1936) 16 Cal.App.2d 606 [61 P.2d 352], in which a condition that defendant submit to sterilization surgery was upheld was said to be dubious authority today. We agree.

Mr. Witkin has stated (*op.cit. supra*, § 1050, p. 994):

"When a defendant is granted probation pursuant to the statutory procedure . . . and subject to any conditions im-

---

[1]"At any time during the probationary period of the person released on probation . . . the court may in its discretion . . . revoke and terminate such probation, if the interests of justice so require, and if the court in its judgment, shall have reason to believe from the report of the probation officer, or otherwise, that the person so placed upon probation is violating any of the conditions of his probation, or engaging in criminal practices, or has become abandoned to improper associates or a vicious life.'' (Pen. Code, § 1203.2.)

posed by the court . . . he is physically free, but is regarded as 'constructively' in the custody of the probation officer.''

''. . . [P]robation essentially calls for continuing supervision of the probationer and maintaining jurisdiction and power in the trial court to act in respect to such supervision.'' (*In re Osslo* (1958) 51 Cal.2d 371, 380 [334 P.2d 1]; see also, *People* v. *Atwood* (1963) 221 Cal.App.2d 216, 222 [34 Cal.Rptr. 361], hearing den.)

 Conditions of probation may be modified. Modification is expressly provided by statute for a violation by the probationer of any of the terms and conditions of the probation order (Pen. Code, §§ 1203.1, 1203.2), and modification has been declared proper when the probationer has practiced deception upon the court at the time probation was granted. (*In re Bine* (1957) 47 Cal.2d 814, 817 [306 P.2d 445]; *People* v. *Sapienzo* (1923) 60 Cal.App. 626, 629 [213 P. 274].)

As stated the second probation report charged petitioner with the use of deception. There was no direct proof of deception by petitioner at the outset. Neither changing prospective grooms nor getting married was duplicitous per se. Of course, if petitioner had jilted the young soldier to marry Peeler solely as a ploy to evade conditions of probation (which were contained in the first probation report, which had been read by petitioner before her marriage, and which she could have assumed the court would adopt), then there was deception. Petitioner later testified she did not know Peeler had been involved in narcotics. The judge did not have to believe her. Possibly there is enough in the record to permit a court to draw an inference. Possibly not. We need not and do not find deception here.

Read as a whole we do not construe either the Penal Code sections covering probation or the cases cited above construing those sections to limit the power of the court to modify conditions of probation to cases in which there has been either deception practiced by the probationer when probation was granted or a violation of the conditions of probation by the probationer thereafter. It has been held that modification can be justified only when new facts appear. (*In re Bine, supra; In re Clark* (1959) 51 Cal.2d 838, 840 [337 P.2d 67].) And the order of modification must not be arbitrary. (*In re Bine, supra; People* v. *Sapienzo, supra,* and *People* v. *Dominguez, supra.*) New facts appeared here.

Possession of marijuana was a felony under the law (Health & Saf. Code, § 11530) at the time petitioner's offense

was committed.[2] Recividism was and is punishable by heavy minimum sentences in the state prison.

 Our detailed summary of facts has served its purpose if it has given a picture of the brink of the precipice upon which this petitioner precariously is perched. Whether she was or is a good or poor risk for probation—for self-rehabilitation—only time can tell. The trial judge was doubtful. After a close study of this record we share his doubts. Petitioner's repetition of the offense after arrest and her tendency to minimize her involvement with narcotics do not augur well for this girl's chances. Yet she has been given that chance. The conditions imposed under the *original* order of probation were designed by the trial court to aid petitioner in the difficult course she faces. This reviewing court is of the opinion that they were reasonably designed. A new fact arose. Placing to one side for the moment petitioner's marriage and its effect upon the court's powers, that new fact is this: petitioner is consorting with and proposes now to live with a person presently charged with involvement in the narcotics traffic much more seriously than petitioner is thought to be. Peeler faces trial imminently for alleged offenses such that if he is found guilty as charged will stamp him as a young man up to his neck in the narcotics traffic. We have no doubt whatever that the facts before the court justified the imposition of the new conditions of probation—again begging the marital status question.

We now turn to a discussion of the validity of the order in the context of the fact of that marriage.

SUMMARY OF PUBLIC POLICY RE THE
INVIOLABILITY OF A MARRIAGE

"Marriage is one of the 'basic civil rights of man' fundamental to our very existence and survival. *Skinner* v. *Oklahoma* (1942) 316 U.S. 535, 541 [86 L.Ed. 1655, 1660, 62 S.Ct. 1110]. See also *Maynard* v. *Hill* (1888) 125 U.S. 190 [31 L.Ed. 654, 8 S.Ct. 723]." (*Loving* v. *Virginia* (1967) 388 U.S. 1, 12 [18 L.Ed.2d 1010, 1017, 87 S.Ct, 1817]; Cf. *Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678].)

There is a definite and vital public interest in the marriage

---

[2]By legislative amendment (Stats. 1968, ch. 1465, in effect Nov. 13, 1968) for first offenders possession of marijuana may be punishable either as a misdemeanor or as a felony.

relation (*Hendricks* v. *Hendricks* (1954) 125 Cal.App.2d 239, 242 [270 P.2d 80].)

*Loving* v. *Virginia, supra,* as noted, cites the early case of *Maynard* v. *Hill,* 125 U.S. 190 [31 L.Ed. 654, 8 S.Ct. 723] from which we quote (at page 211 [31 L.Ed. at p. 658]) ; ''It [marriage] is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress.''

We think it unnecessary to multiply authority for the public policy involved in maintaining the integrity of marriage as an institution. The trial court in the matter before us undoubtedly weighed that public policy in relation to the public policy involved in an attempt to rescue this petitioner from involvement in narcotic violations to her possible permanent destruction as a useful member of society. ▮ This court judicially notices the narcotics problem as one of the most serious facing society today—particularly as it relates to the youths of this state and nation.

Progression : Use—to addiction—to sale and the all too frequent corruption of others, progression from marijuana—to ''restricted dangerous drugs'' (see Health & Saf. Code, § 11901)—to heroin—are profluencies with which every trial judge and appellate judge in this state is only too sorrowfully familiar.

▮ The trial court here has not severed the marital union of petitioner and Peeler. Had it denied or revoked probation it would have more permanently affected the probability of the durability of the marriage. In this state conjugal visitation rights are not recognized in either county jails or state prisons. Two other contingent future events would also challenge such durability : (1) conviction, sentencing and incarceration of the husband after the trial he faces, and (2) the failure of the probationary experiment, the clemency, presently vouchsafed petitioner with the inevitable result of her own incarceration.

We have not lost sight of the eventual acquittal of the presumptively innocent husband, with his ability to demonstrate that he is a fit consort for this petitioner, plus petitioner's own development of a mature sense of responsibility which will permit the court again to modify the terms of probation to the end that petitioner and her husband may live happily ever after.

We hold that under the peculiar circumstances of this case

the conditions imposed by the court were reasonable and valid pro tempore. (The terms imposed insofar as they affect the marital status of this couple are temporary.) Our ruling does not extend to a blanket endorsement by this court of the separation of husbands and wives as a condition of probation under all circumstances. Decision must be on a case-by-case basis. The views expressed above regarding the weighing of the policies pro and con will, we hope, be helpful.

The order staying enforcement of certain conditions is hereby vacated, effective immediately. The order to show cause is discharged and the writ of habeas corpus is denied.

Regan, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied December 4, 1968.