[No. D011189. Fourth Dist., Div. One. Jan. 11, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
PHILLIP EUGENE WARDLOW, Defendant and Appellant.

**COUNSEL**

Bruce Daniel Rosen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney

General, Louis R. Hanoian and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### KREMER, P. J.—

Phillip Eugene Wardlow pleaded guilty to four counts of child molesting (Pen. Code, § 288, subd. (a)).[1] On appeal, he challenges conditions imposed on his probation involving a waiver of Fourth Amendment rights; a prohibition against associating with two of his brothers; and orders of restitution involving the victims' medical and psychological treatment. We find merit to Wardlow's contentions concerning the number of victims and concerning payment of restitution to Medi-Cal, the victim's assistance fund and the sheriff's department and, therefore, reverse and modify in part. In all other respects, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Between September 1988 and May 1989, Wardlow, who was then 18 years old, molested 4 neighborhood boys while he was babysitting. Wardlow's brother, James, also molested some of these same boys while James was babysitting. Additionally, a young sister of one of the boys told authorities Wardlow had exposed himself to her and had touched her in the crotch area.

Wardlow admitted molesting three of the boys but adamantly denied molesting the fourth boy or the girl. He said the reason he molested the children was because his brother, James, used to molest him when he was younger. Another brother, Charles, had been convicted of child molestation in the past and had a matter pending involving a nephew at the time the probation report was prepared. A third brother, Paul, was on parole following a robbery conviction.

Wardlow admitted using methamphetamine or alcohol before the majority of the molestations. For the six months prior to the arrest, Wardlow was using methamphetamine on a daily basis and sometimes two or three times a day and sometimes would drink one or two 6-packs of beer at a sitting. Wardlow, nonetheless, denied having a serious drug problem to the probation officer. The psychologist who examined Wardlow for the defense

---

[1] All statutory references are to the Penal Code unless otherwise specified.

recommended that as a condition of probation Wardlow "receive intensive treatment for his alcohol and drug dependencies."

Wardlow was initially charged with 76 counts of child molestation, forcible child molestation and distributing or exhibiting harmful material to a child. (Pen. Code, §§ 288, subds. (a), (b), 313.1.) All of the counts related to the four boys; none involved the sister. He successfully demurred to five of the counts. Eventually, Wardlow entered into a plea bargain where he pleaded guilty with a *Harvey*[2] waiver to four counts involving three of the boys in exchange for the dismissal of other charges and the People's agreement not to oppose a local time disposition with no more than two years in local custody as a condition of probation.

The court imposed a 14-year probation. Among the conditions imposed were requiring Wardlow to enroll in a therapy program, abstain from using alcohol and any controlled substances without a valid prescription and to submit to drug testing. The court also required Wardlow to "submit his person, property, place of residence, vehicle, personal effects to search at any time with or without a warrant and with or without reasonable cause when required to do so by the probation officer or any law enforcement officer"; "have no contact directly or indirectly with either his brother James Wardlow or his brother Charles Wardlow"; pay restitution "for the victims' psychological treatment incurred as a result of the defendant's molestation of them"; and "pay restitution to the San Diego Sheriff's Department pursuant to Penal Code section [1203.1h] for expenses incurred as a result of victims' treatment and/or examination at Children's Hospital."

### DISCUSSION

The purpose of probation is rehabilitation. "Probation is an act of leniency, not a matter of right. [Citations.]" (*People* v. *Walmsley* (1985) 168 Cal.App.3d 636, 638 [214 Cal.Rptr. 170], disagreed with on other grounds in *People* v. *Lafantasie* (1986) 178 Cal.App.3d 758, 764 [224 Cal.Rptr. 13].) Its purpose is rehabilitation. (*In re Peeler* (1968) 266 Cal.App.2d 483, 484 [72 Cal.Rptr. 254].) "The Legislature has placed in trial judges a broad discretion in the sentencing process, including the determination as to whether probation is appropriate and, if so, the conditions thereof. [Citation.]" (*People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].) " 'A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality

[2] *People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396].

. . . ." ' " (*People* v. *Burgener* (1986) 41 Cal.3d 505, 532 [224 Cal.Rptr. 112, 714 P.2d 1251].) In other words, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality. (*People* v. *Baumann* (1985) 176 Cal.App.3d 67, 77 [222 Cal.Rptr. 32].)

■ ■ ■ ■ *Search Condition*[3]

■ Wardlow contends the court improperly conditioned his probation on a waiver of Fourth Amendment rights.

■ A condition allowing searches or a waiver of Fourth Amendment rights may further dual purposes of deterring future offenses by the probationer and ascertaining whether he is complying with the terms of his probation. (*People* v. *Bravo* (1987) 43 Cal.3d 600, 610 [238 Cal.Rptr. 282, 738 P.2d 336], cert. den. 485 U.S. 904 [99 L.Ed.2d 234, 108 S.Ct. 1074].) As Wardlow points out, such Fourth Amendment waiver conditions are more common in cases in which the defendant is convicted of possessing controlled substances, weapons or stolen property. (See, e.g., *People* v. *Giminez* (1975) 14 Cal.3d 68, 71, fn. 3 [120 Cal.Rptr. 577, 534 P.2d 65] [possession of drugs]; *People* v. *Watkins* (1987) 193 Cal.App.3d 1686, 1690 [239 Cal.Rptr. 255] [conviction of arson, propensity to possess torches and materials for their construction].)

■ Here, Wardlow admitted that in the six months before his arrest he used methamphetamine daily and sometimes several times a day. This is the same period during which the molestations occurred. Wardlow further specifically admitted that, before the majority of the molestations, he used methamphetamine or alcohol. This record shows a serious substance abuse problem which was related to Wardlow's commission of the offenses. Yet, Wardlow denied having a serious substance abuse problem. The psychologist who examined Wardlow strongly recommended treatment for substance abuse as a condition of probation. The record here does not, as Wardlow suggests, show his methamphetamine use was "merely coincidental" to the crimes committed. (Contrast *People* v. *Keller* (1978) 76 Cal.App.3d 827, 837-840 [143 Cal.Rptr. 184] [No evidence suggested any drug relationship to the petty theft of which Keller was convicted].) Under

---

[3]The Attorney General contends Wardlow cannot object to this condition on appeal because he consented to it by accepting probation. This contention is without merit. "[T]he acceptance of probation does not preclude a challenge on appeal to the validity of a probation condition. ' "[B]y accepting the benefits of probation a defendant does not waive the right to urge the invalidity of an improper, a void, condition on direct appeal from that judgment . . . ." ' " (*People* v. *Narron* (1987) 192 Cal.App.3d 724, 730 [237 Cal.Rptr. 693].)

these circumstances, the trial court did not abuse its discretion in imposing the search condition to ensure Wardlow did not abuse controlled substances.

### Condition of No Contact With Brothers

■ As a condition of probation the court prohibited Wardlow from having any contact with two of his brothers. Wardlow contends this condition is overbroad and not reasonably related to his crimes. The record, however, shows these brothers not only had a past history of molesting children, but were, at the time of Wardlow's sentencing, facing additional charges of child molestation. One of these brothers, James, was charged as a codefendant, had molested some of the same children under the same circumstances and had, in Wardlow's estimation, been the reason why Wardlow himself was a child molester. The court did not prohibit Wardlow from contact with a third brother who had not been involved with child molesting or from contact with his parents. In other words, the court conditioned Wardlow's probation on his not associating with known child molesters, i.e., his brothers Charles and James; the condition did not prohibit all contact with family members.

Conditions of probation prohibiting an individual from associating with other persons including spouses and close relatives, who have been involved in criminal activity have generally been upheld when reasonably related to rehabilitation or reducing future criminality. (See *In re Peeler, supra,* 266 Cal.App.2d 483 [spouse]; *State* v. *Donovan* (1977) 116 Ariz. 209 [568 P.2d 1107]; *Isaacs* v. *State* (Fla.App. 1977) 351 So.2d 359 [brother]; *Edwards* v. *State* (1976) 74 Wis.2d 79 [246 N.W.2d 109]; Annot. (1980) 99 A.L.R.3d 967 [prospective spouse].)

Here, the condition related to two persons who were repeat child molesters. Keeping Wardlow from associating with other child molesters was reasonably related to rehabilitation and future criminality, particularly since Wardlow, himself, believed he had become a child molester because his brother had molested him. The condition was not overbroad; the court tailored the condition narrowly to include only those family members who were child molesters. We find no abuse in the imposition of this condition.

### Restitution for the Victims' Psychological Treatment

■ The court ordered Wardlow to "pay restitution pursuant to Penal Code section 1203.1g for the victims' psychological treatment incurred as a result of the defendant's molestation of them. Said amount of restitution to be set by further order of the court."

As Wardlow points out, this condition is ambiguous; it does not specify to whom he is to pay restitution. Here, Wardlow was charged with counts involving four victims but he pleaded guilty to counts involving only three victims and adamantly denied molesting the fourth victim. The probation report mentions a possible fifth victim, a sister of one of the boys, whom Wardlow stated he did not molest. Thus, this condition could be construed as requiring Wardlow to pay restitution to three, four or five "victims."

Nonetheless, we do not believe reversal is required here. The record is clear that the restitution order was intended to include at least the three victims of the counts to which Wardlow pleaded guilty. The Attorney General does not argue the condition applies to more than the three victims of the counts to which Wardlow pleaded guilty. Construing the condition as limited to the three victims of the crimes to which Wardlow pleaded guilty results in the most favorable possible construction of the condition. Under these circumstances, we conclude no purpose would be served by a reversal and remand. We interpret the condition as requiring Wardlow to pay for the psychological treatment of the three victims of the counts to which Wardlow pleaded guilty.

■ Wardlow argues the condition is invalid to the extent it requires him to make payments to Medi-Cal or the victim's assistance fund to reimburse them for the costs of the victims' therapy.[4]

The court ordered Wardlow to pay restitution for the victim's psychological treatment pursuant to section 1203.1g which provided, in pertinent part:

"In any case in which a defendant is convicted of sexual assault on a minor, and the defendant is eligible for probation, the court as a condition of probation, may order him or her to make restitution for the *costs* of medical or psychological treatment *incurred by the victim as a result of the assault* and that he or she seek and maintain employment and apply that portion of his or her earnings specified by the court toward those costs." (Italics added.)

The Attorney General cites *People* v. *Narron, supra,* 192 Cal.App.3d 724 in support of an argument Medi-Cal and the victim's assistance fund were indirect victims to whom restitution could be ordered. In *Narron,* the trial court ordered the defendant to pay restitution to Lake County for the costs of destroying dangerous chemicals lawfully seized from the defendant's residence which were being used to illegally manufacture controlled sub-

---

[4]The probation report indicates the three boys involved in the counts to which Wardlow pleaded guilty were receiving therapy paid for by Medi-Cal and/or the victim's assistance fund.

stances. Restitution was ordered as a condition of probation. The court stated:

"We first note as a general proposition that restitution is not necessarily limited to persons. Neither Penal Code section 1203.1 nor section 1203.04 defines the term 'victim.' However, the policies of these provisions favor a definition which includes the government where it suffered loss flowing from a defendant's criminal conduct. Including the government as a potential 'victim' accords with the court's discretion to employ probation conditions which ensure 'that amends . . . be made to society for the breach of the law, . . .' (Pen. Code, § 1203.1.) Moreover, the concept of restitution embodies not only the notion that people who suffer loss as a result of criminal activity should be compensated for those losses (Cal. Const., art. I, § 28, subd. (b)), but also a perception of the value of restitution as a 'deterrent to future criminality' [citation], and 'to rehabilitate the criminal.' [Citation.] Both aims are furthered by imposing a restitution condition in appropriate cases whether or not the victim is an individual. We therefore agree with the dictum that '[t]he government may be the beneficiary of [restitution] if it has incurred actual loss due to the crime, as in the instance of tax evasion or theft of government property, . . .' [Citations.]

"It also appears that Lake County could be considered a 'victim' of appellant's criminal activity. While the county was not a direct victim as in the case of tax fraud or theft of government property, restitution is not limited to direct victims. Courts have rejected the argument 'that a restitution condition may never be ordered in favor of anyone other than the direct victim of a crime. . . . [Rather] the appropriate rule . . . [is that] the propriety of a particular restitution condition must be determined by reference to the purposes of probation in light of the facts and circumstances of each case.' [Citation.] Thus, restitution provisions have been upheld where defendant was ordered to provide restitution to a crime victim's children [citation] and to an automobile accident victim's insurer. [Citation.] These cases demonstrate that restitution is permissible to any victim who suffered 'actual loss flowing from the charged offense or from related misconduct.' [Citation.] Thus, while we have uncovered no cases in which the government was permitted to receive restitution even though it was not the direct victim of a crime, application of established principles of probation leads to the conclusion that restitution would be permissible in such cases." (*Id.* at pp. 732-733.)

This language in *Narron* is dicta. The *Narron* court actually held the restitution imposed as a probationary condition was improper because the Health and Safety Code provided the exclusive means of recovering costs incurred for the destruction of controlled substances. *Narron* also did not

involve the same section involved here, i.e., section 1203.1g, which limits restitution to "the costs of medical or psychological treatment *incurred by the victim* as a result of the assault." (Italics added.)

Wardlow points to *People* v. *Williams* (1989) 207 Cal.App.3d 1520 [255 Cal.Rptr. 778] to support his position Medi-Cal and the victim's assistance fund are not "victims." In *Williams* the court held an order of restitution to an insurance company was improper because the insurance company was not a victim. The *Williams* court construed Government Code section 13967, subdivision (c) which authorizes the court to order restitution directly to the victim in lieu of a restitution fine payable to the state restitution fund "[i]n cases in which a victim has suffered economic loss as a result of the defendant's criminal conduct, and the defendant is denied probation." The *Williams* court rejected the characterization of the insurance company as a victim because the insurance company was not the functional equivalent of a victim injured as the result of a crime because the insurance company's payments arose from its contractual obligation to the injured person due to the premiums paid by the insured; the insurance company did not fit within the definition of a victim set out in Government Code section 13960, subdivision (a);[5] and the Legislature had defined "pecuniary loss" in Government Code section 13960, subdivision (d) as "any expenses for which the victim has not and will not be reimbursed from any other source."[6]

While the *Williams* decision involved the interpretation of restitution fines rather than restitution as a condition of probation, we believe its

---

[5] Government Code section 13960, subdivision (a) provides: "As used in this article:

"(a) 'Victim' means any of the following residents of the State of California, or military personnel and their families stationed in California:

"(1) A person who sustains injury or death as a direct result of a crime.

"(2) Anyone legally dependent for support upon a person who sustains injury or death as a direct result of a crime.

"(3) Any member of the family of a victim specified by paragraph (1) or any person in close relationship to such a victim, if that member or person was present during the actual commission of the crime, or any member or person herein described whose treatment or presence during treatment of the victim is medically required for the successful treatment of the victim.

"(4) Any member of the family of a person who sustains injury or death as a direct result of a crime when the family member has incurred emotional injury as a result of the crime. Pecuniary loss to these victims shall be limited to only medical expenses, mental health counseling expenses, or both, of which the maximum award shall not exceed ten thousand dollars ($10,000).

"(5) In the event of a death caused by a crime, any individual who legally assumes the obligation, or who voluntarily pays the medical or burial expenses incurred as a direct result thereof."

[6] We agreed with the *Williams* holding in *People* v. *Blankenship* (1989) 213 Cal.App.3d 992, 999-1000 [262 Cal.Rptr. 141].

reasoning has application here. Section 1203.1g provides for a restitution condition of probation for "*costs* of medical or psychological treatment *incurred by the victim as a result of the assault.*" (Italics added.) Like the insurance company in *Williams,* Medi-Cal and the victim's assistance fund made payments for the treatment of the victims because of an independent obligation to pay the injured person, not because Medi-Cal and the victim's assistance fund had been assaulted and were victims of a crime who were undergoing and paying for medical and psychological treatment. Further, section 1203.1g must be read in light of the statutory scheme for probation conditions, in particular, in light of section 1203.1h which provides a court may order a defendant convicted of child abuse or neglect to reimburse a law enforcement agency for the costs of any medical examinations of the victim. There would be no need for this section authorizing the reimbursement of law enforcement agencies for medical examinations if section 1203.1g were construed, as the Attorney General suggests, to encompass indirect victims and government agencies which made payments for a child abuse victim's medical or psychological treatment. We conclude the Legislature intended to include only the direct, actual victims of an assault within the restitution condition authorized by section 1203.1g.

### *Restitution to the Sheriff's Department*

 Wardlow contends the court improperly ordered him to pay restitution to the sheriff's department for the victims' "treatment and/or examination at Children's Hospital" pursuant to section 1203.1h.

Section 1203.1h provides:

"In addition to any other costs which a court is authorized to require a defendant to pay, upon conviction of any offense involving child abuse or neglect, the court may require that the defendant pay to a law enforcement agency incurring such cost, the cost of any medical examinations conducted on the victim in order to determine the nature or extent of the abuse or neglect. If the court determines that the defendant has the ability to pay all or part of the medical examination costs, the court may set the amount to be reimbursed and order the defendant to pay that sum to the law enforcement agency in the manner in which the court believes reasonable and compatible with the defendant's financial ability. In making a determination of whether a defendant has the ability to pay, the court shall take into account the amount of any fine imposed upon the defendant and any amount the defendant has been ordered to pay in restitution."

Here, as Wardlow points out, there was no evidence presented as to what, if any, costs the sheriff's department incurred in obtaining an examination

or treatment of the victims nor did the court set an amount to be reimbursed or determine if Wardlow had the ability to pay the costs. Section 1203.1h clearly contemplates the amount will be set at the time the condition is imposed. Nothing in the record suggests any excuse for the failure to determine the costs at the time of the sentencing here (the examinations occurred over four months earlier). Nor is there any excuse for the court's failure to determine whether Wardlow had the ability to reimburse the sheriff's department for the costs of examining and/or treating the children.[7] Accordingly, we order stricken the condition Wardlow reimburse the sheriff's department for the costs of treating and/or examining the victims at Children's Hospital.

### DISPOSITION

The condition requiring reimbursement to the sheriff's department for the victim's medical expenses and/or treatment is stricken. The condition requiring restitution for the victim's psychological treatment is clarified to require Wardlow to pay restitution only to the victims for the costs incurred by them and not to Medi-Cal or the victim's assistance fund for any payments they made to the victims. In all other respects, the judgment is affirmed.

Todd, J., and Benke, J., concurred.

---

[7] The Attorney General asserts there is no requirement a trial court must make an express finding of an ability to pay before imposing a restitution condition and therefore argues the lack of an express determination to pay here does not defeat the condition. The record in this case, however, does not support an inference the court made any sort of determination, express or implicit, on the issue. No evidence was presented on the issue nor inquiry made.