[No. D031953. Fourth Dist., Div. One. Nov. 4, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
DESIREE LU BALESTRA, Defendant and Appellant.

58

**COUNSEL**

Laurel Nelson Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle M. Boustany and Richard S. Armstrong, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BENKE, Acting P. J.**—By information filed January 15, 1998, the District Attorney of San Diego County accused Desiree Lu Balestra (Balestra) in one count with inflicting willful cruelty on an elder, in violation of Penal Code

section 368, subdivision (a);[1] in a second count with false imprisonment by violence, in violation of section 237; in a third count with assault by means likely to produce great bodily injury, in violation of section 245, subdivision (a)(1); and in a fourth count with having made a terrorist threat, in violation of section 422.

On February 11, 1998, Balestra entered a plea of guilty to the count of one charge of elder abuse (the victim was Balestra's 69-year-old mother, Dolores Holden) on condition the remaining charges be dismissed and the current plea would not be considered a "strike" for future purposes. On March 13, 1998, Balestra was granted probation on condition she serve 210 days in custody, submit her person and property to search with or without probable cause, undergo drug and alcohol testing if so directed, and repay probation and legal representation costs. Restitution to the victim was deferred to a future hearing.

Five victim restitution hearings were conducted over the next seven months, culminating in an order of September 2, 1998, requiring Balestra to pay her mother the sum of $7,198 as victim restitution. On September 9, 1998, Balestra filed her notice of appeal from the sentence imposed.

FACTS[2]

On the evening of January 7, 1998, Balestra came home about 8:00 p.m. Her mother smelled alcohol on her, and the two of them continued an argument they had begun over the telephone earlier. (Balestra's mother described her as acting "weird" that evening.)

About 10:20 p.m., Balestra went into her mother's room, shut the door behind her and told her mother that she was not free to leave. Balestra told her mother she had never liked her, and said: "This is bye-bye . . . you won't be here tomorrow . . . I'm going to have some fun with you." Balestra also told her mother about two other people she had assaulted; a roommate whom Balestra claimed to have "bloodied from head to toe," and a boyfriend to whose head Balestra had held a knife.

Balestra then beat and otherwise terrorized her mother for the next two hours, pushing Dolores's head into her chest, pulling her hair, beating her on the arms, shoulder, back and legs, and tearing up personal letters and other sentimental objects that belonged to Dolores, while professing her hatred of her mother.

---

[1] All undesignated statutory references are to the Penal Code.

[2] As this case involves a plea of guilty, the facts of the offense are taken from the probation report.

Dolores could not escape until she hit Balestra, and the two of them fell to the floor. Dolores then seized the opportunity to run out of the house, go next door, and call 911.

## PROCEDURE

### Guilty Plea

On February 11, 1998, Balestra appeared and entered a plea of guilty to the charged elder abuse, on condition that (1) the People dismiss the rest of the charges and (2) that this felony not count as a strike against her for future purposes. At this time, the judge commented to Balestra that "you need treatment for what everybody appears to agree is an alcohol problem which you have . . . ."

### Grant of Probation

The probation report recommended Balestra receive probation on condition she spend 210 days in local custody. The report also recommended alcohol treatment in a residential program, submission to a search condition, drug/alcohol testing at the discretion of the probation officer, and repayment of costs of probation. The report also noted Balestra (despite her plea of guilty) was now asserting that her mother unfairly accused her of drinking when she only had a couple of glasses of wine that night, that she had not abused her mother, and that her mother had perhaps injured herself "trying to get out the window and by bumping against the wall."

On March 13, 1998, Balestra appeared for sentencing. Among other things, Balestra's counsel objected to the search condition and the condition for drug/alcohol testing, but had no objection if the court would delete references to drugs. The court found the search condition to be "appropriate in view of the circumstances in this case," and declined to modify the drug or alcohol testing requirements, observing that it was unlikely the probation department, with limited resources, would insist on routine drug screening of Balestra. The hearing on the amount of victim restitution was set for a future date.

### The Victim Restitution Hearings

Eventually, Dolores testified as to the damages inflicted on her by Balestra and her orthodontist testified the estimated cost of repairing the damages inflicted on her by Balestra was $8,350. The court found the testimony of the orthodontist "very reasonable," and later ordered that restitution in the amount of $7,198 be made, at the previously ordered rate of $75 monthly.

## STANDARD OF REVIEW

Balestra urges that the restitution order was not supported by substantial evidence, that improper search and drug testing probation conditions were imposed, and that other terms of her probation violated her plea agreement in this case.

As to Balestra's assertion of abuse of discretion in setting the amount of restitution, Division Two of this district has set out the applicable standard: "The terms and conditions set by the trial court for victim restitution will not be overturned unless the trial court abused its discretion. 'Restitution as a condition of probation is favored by public policy both as a means of doing justice to the victim [citation], and for rehabilitation of the offender [citations] . . . . Where there is a factual and rational basis for the amount of restitution set, no abuse of discretion will be found by the reviewing court.' [Citation.]" (*People* v. *Whisenand* (1995) 37 Cal.App.4th 1383, 1391 [44 Cal.Rptr.2d 501].)

The assertion improper conditions of probation were imposed is reviewed under a similar, highly deferential standard: " 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.] Concomitantly, '[a] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citations.]' [Citation.]" (*People* v. *Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978 [60 Cal.Rptr.2d 93, 928 P.2d 1171].)

## DISCUSSION

### I

### *Restitution Order*

Balestra argues that the trial court abused its discretion when it set the restitution amount. As noted above, however, all that is required on appellate review of a restitution order is that a rational basis for the order appear in the record. Here, that rational basis is clear.

As appellate courts have frequently observed, "[T]he trial court is vested with broad discretion in setting the amount of restitution; it may

' "use any rational method of fixing the amount of restitution which is reasonably calculated to make the victim whole . . . ." ' [Citations.]" (*People* v. *Tucker* (1995) 37 Cal.App.4th 1, 6 [44 Cal.Rptr.2d 1].)

We highlighted in the standard of review the rule that ". . . the court is not limited to the transaction or amounts of which the defendant is actually convicted." (*People* v. *Whisenand*, *supra*, 37 Cal.App.4th at p. 1391.) Our Supreme Court also held that "[t]here is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action." (*People* v. *Carbajal* (1995) 10 Cal.4th 1114, 1121 [43 Cal.Rptr.2d 681, 899 P.2d 67]; see also *People* v. *Ortiz* (1997) 53 Cal.App.4th 791, 800 [62 Cal.Rptr.2d 66].)

 In this case, the trial court heard and weighed all of the conflicting evidence, and determined that the sum of $7,198 was proper. There being a rational basis for the trial court's determination, and in view of the broad discretion that is afforded the trial court and the lack of any requirement that a restitution order be limited only to exactly provable losses, we may not now overturn the order.

II

*Probation Conditions*

 Balestra also argues the imposition of consent to search condition of her probation, as well as a drug testing condition, were abuses of discretion. We do not agree.

A. *The Statute*

Probation is governed by statute. That statute, section 1203.1, provides in pertinent part: "The court, or judge thereof, in the order granting probation, may suspend the imposing or the execution of the sentence . . . . [¶] . . . [¶] The court may impose and require . . . reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally *and specifically for the reformation and rehabilitation of the probationer*, and that should the probationer violate any of the terms or conditions imposed by the court in the matter, it shall have authority to modify and change any and all the terms and conditions and to reimprison the probationer in the county jail within the limitations of the penalty of the public offense involved." (Italics added.)

## B. *The Cases*

 The classic formulation of a trial court's power to impose probation conditions is taken from *People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545], where our Supreme Court stated: "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]"[3]

Insofar as a probation condition serves the statutory purpose of "reformation and rehabilitation of the probationer," (§ 1203.1) it necessarily follows that such a condition is "reasonably related to future criminality" and thus may not be held invalid whether or not it has any "relationship to the crime of which the offender was convicted." (*People v. Lent, supra,* 15 Cal.3d at p. 486.)

Case authority from our Supreme Court has repeatedly set out the boundaries of a trial court's discretion to impose probation under various terms and conditions, and the standard of review of these determinations is abuse of discretion: "In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1. . . . The trial court's discretion, although broad, nevertheless is not without limits: *a condition of probation must serve a purpose specified in the statute.* In addition, we have interpreted Penal Code section 1203.1 to require that probation conditions which regulate conduct 'not itself criminal' be 'reasonably related to the crime of which the defendant was convicted *or to future criminality.*' [Citation.] As with any exercise of discretion, the sentencing court violates this standard when its determination is arbitrary or capricious or ' " 'exceeds the bounds of reason, all of the circumstances being considered.' " [Citations.]' (*People* v. *Welch* [(1993)] 5 Cal.4th [228,] 233 [19 Cal.Rptr.2d 520, 851 P.2d 802].)" (*People* v. *Carbajal, supra,* 10 Cal.4th 1114, 1120-1121, italics added.)

 Further, in response to the objection the consent of a probationer to warrantless search as a condition of probation is not sufficiently voluntary, our Supreme Court has stated: "When [warrantless search and seizure] conditions are imposed upon a probationer . . . it is established that the individual 'consents to the waiver of his Fourth Amendment rights in exchange for the opportunity to avoid service of a state prison term. Probation is not a right, but a privilege.' (*People* v. *Bravo* (1987) 43 Cal.3d 600,

---

[3]The test is clearly in the conjunctive, that is, the three factors must all be found to be present in order to invalidate a condition of probation.

608 [238 Cal.Rptr. 282, 738 P.2d 336].)"[4] (*In re York* (1995) 9 Cal.4th 1133, 1150 [40 Cal.Rptr.2d 308, 892 P.2d 804].)

In light of these cases, and the governing statute, we examine Balestra's challenges to the conditions of probation.

## C. *Search Condition*

Balestra relies primarily upon *People* v. *Keller* (1978) 76 Cal.App.3d 827 [143 Cal.Rptr. 184] (*Keller*), a case in which this court went far beyond the *Lent* test to list a total of seven factors we would require to uphold a probation condition, including what we deemed a constitutional "mandate" that a probation "condition[] be *reasonable*, reasonable in proportion, as well as reasonably related, to the crime committed." (*Id.* at p. 838.)[5] Finding the search condition not reasonable, we reversed the order denying suppression of the heroin found in a warrantless search. (*Id.* at p. 840.)

*Keller* noted that *People* v. *Mason* (1971) 5 Cal.3d 759, 764 [97 Cal.Rptr. 302, 488 P.2d 630], had approved a warrantless search condition as to a narcotics offender, but *Keller* limited the *Mason* decision to those facts, instead citing a concurring opinion in *United States* v. *Consuelo-Gonzalez* (9th Cir. 1975) 521 F.2d 259, 267, to the effect that " 'a condition of probation that infringes a probationer's constitutionally protected right to be free from unreasonable searches and seizures cannot be deemed to be reasonable.' " (*Keller, supra,* 76 Cal.App.3d at p. 840, italics omitted.)[6] Holding a search waiver in a petty theft case to be like "the use of a Mack truck to crush a gnat" (*ibid.*), we reversed.

[4]There are however even within this broad authority limits on the power to search. The *Bravo* court noted that a search by police officers based upon a "consent search term" could not be conducted "for reasons unrelated to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes. A waiver of Fourth Amendment rights as a condition of probation does not permit searches undertaken for harassment or searches for arbitrary or capricious reasons. [Citations.]" (*People* v. *Bravo, supra,* 43 Cal.3d 600, 610 [238 Cal.Rptr. 282, 738 P.2d 336].)

[5]*Keller* also held a probation condition could be challenged on appeal or by habeas corpus petition notwithstanding a failure to have objected at the time probation was accepted. (76 Cal.App.3d at pp. 832-833, fn. 2.) In *People* v. *Welch, supra,* 5 Cal.4th 228, 237 [19 Cal.Rptr.2d 520, 851 P.2d 802], however, our Supreme Court held to the contrary, specifically disapproving *Keller* on this point.

[6]*Keller* did observe that "[w]hile *People* v. *Mason, supra,* remains the law we may not join in a conclusion of such breadth" (*Keller, supra,* 76 Cal.App.3d at p. 840), but went on in a supporting footnote to observe that the majority in *United States* v. *Consuelo-Gonzalez, supra,* 521 F.2d 259, had questioned (but not determined) the constitutionality of our Supreme Court's holding in *Mason*. (*Keller, supra,* 76 Cal.App.3d at p. 840, fn. 3.) The note in *Keller* doubting the constitutional validity of our Supreme Court's decision in *Mason* was mistaken. (See, e.g., *Griffin* v. *Wisconsin* (1987) 483 U.S. 868, 880 [107 S.Ct. 3164, 3172, 97 L.Ed.2d 709]; and *In re Tyrell J.* (1994) 8 Cal.4th 68, 85 [32 Cal.Rptr.2d 33, 876 P.2d 519].)

It is clear that *Keller* is inconsistent with the Fourth Amendment jurisprudence since the date of that decision. As our Supreme Court has recently (and repeatedly) made clear, a warrantless search condition is intended to ensure that the subject thereof is obeying the fundamental condition of all grants of probation, that is, the usual requirement (as here) that a probationer "obey all laws." Thus, warrantless search conditions serve a valid rehabilitative purpose, and because such a search condition is necessarily justified by its rehabilitative purpose, it is of no moment whether the underlying offense is reasonably related to theft, narcotics, or firearms: "The threat of a suspicionless search is fully consistent with the deterrent purposes of the search condition. ' "The purpose of an unexpected, unprovoked search of defendant is to ascertain whether [the probationer] is complying with the terms of [probation]; to determine not only whether he disobeys the law, but also whether he obeys the law. *Information obtained under such circumstances would afford a valuable measure of the effectiveness of the supervision given the defendant . . . ." ' [Citations.]"[7] (People* v. *Reyes* (1998) 19 Cal.4th 743, 752 [80 Cal.Rptr.2d 734, 968 P.2d 445], italics added.)

That this proposition is correct cannot be doubted. In a case where a juvenile who was subject to a search condition had his bedroom searched, the search uncovered weapons, drugs and alcohol, and the juvenile objected to the legality of the search. The Court of Appeal found the search lawful as against the claim that the search without probable cause was arbitrary: "Probation is '. . . an alternative form of punishment . . . when it can be used as a correctional tool. [Citation].' [Citation.] With the benefit of probation comes the burden of a 'consent search term.' Such a term serves as a correctional tool . . . ." (*In re Anthony S.* (1992) 4 Cal.App.4th 1000, 1006 [6 Cal.Rptr.2d 214].)

*People* v. *Bauer* (1989) 211 Cal.App.3d 937, 942 [260 Cal.Rptr. 62], upheld a search condition of probation after a defendant's convictions for false imprisonment and assault (circumstances similar to the present case), finding the condition "clearly valid."

Finally, in *People* v. *Wardlow* (1991) 227 Cal.App.3d 360, 365 [278 Cal.Rptr. 1], this court considered the case of a person convicted of child molestation who was ordered to submit to warrantless search as a condition of probation. Noting that "[a] condition allowing searches . . . may further dual purposes of deterring future offenses by the probationer and ascertaining whether he is complying with the terms of his probation" (*id.* at p. 366,

[7]The case of *People* v. *Adams* (1990) 224 Cal.App.3d 705, 712 [274 Cal.Rptr. 94], relied upon by the Attorney General, cited this same language.

citing to *People* v. *Bravo*, *supra*, 43 Cal.3d at p. 610), we accepted Wardlow's point that warrantless search conditions were "more common" in cases involving narcotics, weapons or theft, but nonetheless found the search condition "related" to Wardlow's crimes, as he had used drugs or alcohol before a majority of the molestations. (*People* v. *Wardlow, supra,* 227 Cal.App.3d at p. 366.) Rejecting Wardlow's analogy to *Keller*, we held imposition of the search condition not an abuse of discretion. (*People v. Wardlow, supra,* at p. 367.)

Under the authority of the foregoing cases, imposition of the consent to search condition in this case was proper. Insofar as *Keller* holds to the contrary, we decline to follow that case as inconsistent with subsequent case authority from both the United States and California Supreme Courts.

### D. *Alcohol/Drug Testing Condition*

Balestra also challenges the condition of her probation requiring her to submit to alcohol and drug testing at the discretion of her probation officer. Balestra relies primarily upon *People* v. *Kiddoo* (1990) 225 Cal.App.3d 922, 924 [275 Cal.Rptr. 298] (*Kiddoo*), a case in which Division Two of this district reviewed a condition of probation forbidding a narcotics offender from possessing or consuming alcoholic beverages or frequenting those places where the sale of alcohol was the primary business.

*Kiddoo* quoted *Keller* extensively on the (later disapproved) point of reviewability.[8] (*Kiddo, supra,* 225, Cal.App.3d at pp. 926-927.) Then, despite a probation report indicating Kiddoo had used illegal drugs and alcohol since he was 14 years old and was a current "social drinker" who used methamphetamine "sporadically," the court found the no-alcohol condition was not "reasonably related to future criminal behavior" and struck the condition. (*Id.* at p. 928.)

This court has recently demonstrated the correct deference to the trial court's determination of appropriate conditions of probation, in a case where we rejected the argument, accepted in *Kiddoo*, that a no-alcohol condition is somehow not "reasonable":

"Although an argument can be made that *Kiddoo* is factually distinguishable from this case [citation], we disagree with the fundamental assumptions in *Kiddoo* that alcohol and drug abuse are not reasonably related . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[8]*Kiddoo*, as *Keller*, was specifically disapproved on this point in *People* v. *Welch, supra,* 5 Cal.4th at page 237. (*Ante,* fn. 5.)

. . . Whether the trial court determines to impose such a condition is thus within its sound discretion and, if it does, the defendant must either submit to the condition or, if she considers the condition 'more harsh than the sentence the court would otherwise impose, [exercise] the right to refuse probation and undergo the sentence.' [Citations.] That the use of alcohol is not otherwise illegal does not render the defendant's decision to accept such a condition subject to challenge on appeal. [Citation.]" (*People* v. *Beal* (1997) 60 Cal.App.4th 84, 86-87 [70 Cal.Rptr.2d 80], fn. omitted.)[9]

*Kiddoo*, like *Keller*, is simply inconsistent with a proper deference to a trial court's broad discretion in imposing terms of probation, particularly where those terms are intended to aid the probation officer in ensuring the probationer is complying with the fundamental probation condition, to obey all laws. For the foregoing reasons, we reject Balestra's challenges to both the drug testing and the consent to search conditions of her probation.

### III

### Violation of Plea Agreement

■ Balestra last asserts the probation condition requiring her to repay certain costs of probation and defense was a violation of her plea agreement.[10] There was, however, no such agreement. The entire plea bargain demonstrated by this record is that in exchange for her guilty plea to elder abuse (1) the three other charges would be dismissed, and (2) this felony conviction would not count as a strike against her as to any future felonies.

---

[9]In another recent case, *In re Kacy S.* (1998) 68 Cal.App.4th 704, 710-711 [80 Cal.Rptr.2d 432], minors challenged a provision of the juvenile law permitting drug testing as a condition of probation:

"The minors contend that, by authorizing testing where alcohol and drugs are not implicated in their offenses or social histories, [Welfare and Institutions Code] section 729.3 unconstitutionally invades their privacy [citation] and subjects them to unreasonable search and seizure [citations].

"The collection and testing of urine intrude upon expectations of privacy that society has long recognized as reasonable; these intrusions are searches under the Fourth Amendment. [Citation.] . . .

. . . However, a probationer's expectations of privacy are diminished by his probation status and are subordinated to governmental activities which reasonably limit the right of privacy. [Citation.]

"The testing condition is a reasonable intrusion upon a probationer's expectations of privacy. [Citation.] The governmental interest in testing is strong. The juvenile court's goals are to protect the public and rehabilitate the minor. [Citations.] Section 729.3 serves both goals. . . . Although urine testing constitutes an intrusion on privacy, the effect of the intrusion is outweighed by the government's legitimate interest in closely monitoring the rehabilitation of minors who are granted probation and returned to the custody of their parents."

[10]As Balestra (a) had notice of this condition through the probation report, and (b) did not object to it at the time of being granted probation, she has waived any appeal of imposition of the probation condition as such. (*People* v. *Welch*, *supra*, 5 Cal.4th at p. 237.)

There was no abuse of discretion here. Instead, Balestra was merely ordered to repay those costs incurred by reason of her criminal actions. Division Two of this court has addressed the propriety of such an order: "We find no abuse of the trial court's discretion in ordering defendant to reimburse the county for the costs of court-appointed counsel." (*People* v. *Whisenand*, *supra*, 37 Cal.App.4th at p. 1393.)

The same court addressed the propriety of ordering repayment of court costs and defense costs: "Here, the probation report put defendant on notice that the department was recommending that she pay the costs of the presentence report and probation supervision in the amount of $2,300. Payment of these costs was ordered at the conclusion of the sentencing hearing on May 5, 1993. Defendant did not object at that time . . . . We find that she had notice that the cost order would be made, and that her failure to object waived the issue." (*People* v. *Whisenand*, *supra*, 37 Cal.App.4th at p. 1394.)

Because Balestra had notice she would be required to repay these costs, and did not object thereto, she may not now be heard to argue error, whether the argument is styled as an "improper probation condition" or as a "violation of plea bargain."

### DISPOSITION

The judgment (order granting probation) is affirmed.

Haller, J., and O'Rourke, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 23, 2000. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.