Filed 10/30/14  P. v. Mora CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039941 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SSC110174A) |
| v. | |
| FERNANDO MORA, | |
| Defendant and Appellant. | |

## I.    INTRODUCTION

Defendant Fernando Mora appeals after a jury convicted him of discharging a firearm in a grossly negligent manner (Pen. Code, § 246.3, subd. (a)),[1] unlawful firearm activity (former § 12021, subd. (c)(1)[2]), criminal contempt/disobedience of a protective order (§ 166, subd. (c)(1)), and destroying evidence (§ 135).  Defendant was placed on probation for three years.

On appeal, defendant contends the prosecutor committed misconduct by eliciting testimony that had been excluded during motions in limine, and that trial counsel was ineffective for failing to press for a ruling when he objected to that testimony.  Defendant

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The crime of unlawful firearm activity (i.e., possession of a firearm by a person previously convicted of a specified misdemeanor) is now proscribed by section 29805.  (See Stats. 2010, ch. 711 (S.B. 1080), § 6.76, operative Jan. 1, 2012.)

1

also contends that trial counsel was ineffective for failing to object to prosecutorial misconduct during closing argument. Defendant contends, and the Attorney General concedes, that the trial court erred by imposing a probation condition prohibiting defendant from using or possessing alcohol and controlled substances. We will modify the judgment to strike the challenged probation condition, and we will affirm the judgment as modified.

## II. BACKGROUND

### A. *The Shooting Incident*

Dennis Dunne lived in the area of Metz Road in Soledad. On August 25, 2011, at about 7:00 p.m., Dunne heard about 10 rounds being rapidly fired. He heard more shots and ricochets flying, so he called 911. Other people in the area also reported hearing shots.

Monterey County Sheriff's deputies responded to a residence on Metz Road. They observed fresh shell casings at that location and a blue Camaro parked at the rear of the residence. Deputies set up a perimeter and ordered the people inside the residence to come out.

Three females exited the residence: Paulina Vasquez, her sister Diana Alapisco, and 15-year-old Narda P. Alapisco's five-year-old son was inside the residence. Inside the master bedroom of the residence, deputies found a Colt brand Super model .38-caliber semiautomatic handgun. The gun was in an unsecured floor vent. Deputies also found a .38-caliber magazine containing nine Super P .38-caliber bullets. The magazine was in an accordion file found in the master bathroom. Outside, near the front porch, deputies found an empty box of Super P .38-caliber 130-grain full metal jacket bullets.

Deputies found 30 casings in a dirt area between the residence and the front yard fence. There was a two or three foot tall retaining wall in the area. Deputy Nicholas Kennedy opined that in that area, there was no safe direction to shoot, since a .38-caliber

bullet could travel long distances. Deputy Kennedy had previously shot .38-caliber bullets a distance of 1,800 feet. There were "[a] lot" of homes within 1,800 feet of the location. Metz Road was a major thoroughfare and was also within 1,800 feet of the location.

Deputy Kennedy took oral statements from each of the three females and then had them provide written statements. Vasquez and Narda admitted they had fired the gun with defendant. They had been shooting at an Arizona ice tea can.

Deputy Kennedy asked Vasquez to call defendant from her cell phone. When defendant answered, he asked, "[A]re the cops still there?" Deputy Kennedy took the phone and spoke to defendant, telling him about the evidence and suggesting that defendant turn himself in. Defendant agreed.

Deputy Kennedy looked at the text messages on Vasquez's phone. There was a text at 7:46 p.m. that night that said, "Hey, don't tell them my name." Another text message sent that night stated, "Tell them Jason was there and he left the car there yesterday. No contact with me. Change the story. . . ." Deputy Kennedy established that the message had been sent from defendant, who had the same phone number as the sender.

### B. Defendant's Arrest

Defendant was arrested at a location in Soledad about an hour and a half after the incident. He was sweaty at the time of his arrest. Defendant was tested for gunshot residue. A criminalist found "a lot of particles," indicating defendant had discharged a firearm, been very close to a firearm that had discharged, or had touched a surface that had gunshot residue on it.

While in jail following his arrest, defendant spoke to Vasquez by phone. During the call, defendant admitted knowing that the gun was stolen. He asked Vasquez if she had told the police that the gun was his. When Vasquez described how the police had picked up the bullet shells, defendant said, "All of them have my fucking prints."

3

### C.  Trial Testimony

Narda P. testified that on the night of the incident, defendant was at her residence. He showed his gun to Narda, Vasquez, and Alapisco, then offered to shoot with them. They went into the front yard, where defendant, Vasquez, and Narda shot the gun. They placed a can on a stand that was four or five feet high. The retaining wall and a tree were behind the can. The retaining wall was higher than the can, but not higher than a person. They stopped shooting when a neighbor passed by in a car.

Narda testified that defendant did not shoot rapidly, wildly, up in the air, or toward a moving car. On the night of the incident, she told Deputy Kennedy that defendant had fired the gun up in the air and that he had been firing it rapidly and wildly.

Vasquez likewise testified that defendant showed her the firearm and that she participated in shooting at the can in the front yard along with defendant and Narda, until a neighbor drove by. When defendant was shooting, the gun was "going fast."

At trial, Vasquez denied that defendant fired the gun up in the air. However, on the night of the incident, she told Deputy Kennedy that defendant had fired the gun up in to the air. She had also said that the neighbor's car would have been in the line of fire if they had continued shooting.

Defendant did not testify.

### D.  Restraining Order and Prior Conviction

On December 17, 2009, a criminal protective order was issued. The protected person was Vasquez; the restrained person was defendant. The restraining order did not expire until December 17, 2012.

The parties stipulated that defendant had previously been convicted of a misdemeanor offense within 10 years of the charged offenses.

### E.  Charges, Verdicts, and Sentencing

Defendant was charged with discharging a firearm in a grossly negligent manner (count 1; § 246.3, subd. (a)), unlawful firearm activity (count 2; former § 12021,

4

subd. (c)(1)), criminal contempt/disobedience of a protective order (count 3; § 166, subd. (c)(1)), and destroying evidence (count 4; § 135).

At trial, Defendant argued he was not guilty of count 1 because he did not discharge the firearm in a reckless manner. He "submit[ted] the matter" as to the other three charges.

At the sentencing hearing held on June 28, 2013, defendant was placed on probation for three years.

## III. DISCUSSION

### A. *Prosecutorial Misconduct/Ineffective Assistance: Excluded Testimony*

Defendant contends the prosecutor committed misconduct by eliciting testimony from Deputy Kennedy about a photograph depicting defendant holding two assault rifles, because that testimony had been excluded during motions in limine. Defendant also contends that trial counsel was ineffective for failing to press for a ruling after he objected to the testimony.

#### 1. Motion in Limine and Ruling

During the preliminary hearing, Deputy Kennedy explained how he determined that defendant was the sender of the text messages on Vasquez's cell phone. He described how a cell phone user can include a photograph with another person's contact information, so that the photograph will "pop up" when the other person calls. Deputy Kennedy stated that he observed defendant's photograph in the contact information associated with the text messages, and that in the photograph defendant "was holding what appeared to be an assault rifle . . . ."

During motions in limine, defendant moved to exclude "testimony of a photograph of [defendant] allegedly holding two rifles." Defendant explained the photograph had been taken about one month before the charged offenses. He argued the photograph had "limited relevance" and was "very prejudicial."

5

The prosecutor clarified that the weapons in the photograph were two assault rifles. He argued that the photograph was relevant to the restraining order violation and the fact that defendant had fired the firearm "in a sort of very brash showoffy way."

The trial court found that the evidence "does create substantial danger of undue prejudice in that this is the defendant allegedly holding the two assault rifles within a month of this offense . . . ." The trial court excluded "the fact that there is a photograph . . . involving [two] firearms."

### 2. Trial Proceedings

When Deputy Kennedy testified about looking at the text messages on Vasquez's phone, the prosecutor asked if the deputy had been able to identify the sender. When Deputy Kennedy said, "Yes," the prosecutor asked, "And how did you do that? What was the process?" Deputy Kennedy explained that at the top of the messages, the sender was identified as " 'baby.' " Deputy Kennedy then looked at the contact photograph. He "immediately noticed it was a guy with two assault rifles."

Defendant objected. The prosecutor then asked Deputy Kennedy, "Now, did you establish [the sender's identity] via phone number on the text messages?" Deputy Kennedy stated, "Yes. I was drawn to the contact photo. I went to contacts to see --." The prosecutor interrupted, stating, "Let me approach." The trial court then took the morning recess.

After the recess, Deputy Kennedy testified that he determined defendant had the same phone number as the sender of the text messages.

### 3. Applicable Law

" 'A prosecutor has the duty to guard against statements by his [or her] witnesses containing inadmissible evidence. [Citations.] If the prosecutor believes a witness may give an inadmissible answer during his [or her] examination, [the prosecutor] must warn the witness to refrain from making such a statement.' [Citation.]" (*People v. Leonard* (2007) 40 Cal.4th 1370, 1406 (*Leonard*).) If the prosecutor asks a question that is likely

6

to elicit a reference to inadmissible evidence, the question is misconduct "even if the prosecutor did not intend to elicit such a reference. [Citations.]" (*Id.* at p. 1405.)

" ' "A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.] In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.] A prosecutor's misconduct that does not render a trial fundamentally unfair nevertheless violates California law if it involves 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' [Citations.]" ' [Citation.] 'A defendant's conviction will not be reversed for prosecutorial misconduct, however, unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct. [Citation.] Also, a claim of prosecutorial misconduct is not preserved for appeal if defendant fails to object and seek an admonition if an objection and jury admonition would have cured the injury. [Citation.]' [Citation.]" (*People v. Tully* (2012) 54 Cal.4th 952, 1009-1010 (*Tully*).)

"To prevail on a claim of ineffective assistance of counsel, the defendant must show counsel's performance fell below a standard of reasonable competence, and that prejudice resulted. [Citations.] When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation. [Citation.] Even where deficient performance appears, the conviction must be upheld unless the defendant demonstrates prejudice, i.e., [a reasonable probability] that ' " 'but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " ' [Citations.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 569 (*Anderson*); see also *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694.)

7

### 4. Analysis

Defendant contends the prosecutor committed misconduct by failing to admonish Deputy Kennedy about the motion in limine ruling and by eliciting testimony excluded by the ruling. (See *Leonard, supra,* 40 Cal.4th at p. 1406.)

Since Deputy Kennedy testified about the photo at the preliminary hearing, the prosecutor had "reason to believe" Deputy Kennedy might give the same testimony at trial, and should have admonished him not to do so. (*Leonard, supra,* 40 Cal.4th at p. 1406.) When the prosecutor asked Deputy Kennedy how he had identified the person who sent Vasquez text messages on the night of the incident, his questions—"And how did you do that? What was the process?"— were not designed to elicit a reference to the contact photograph. Although the record does not show what the prosecutor said to Deputy Kennedy before he testified, had he been admonished by the prosecutor, we assume Deputy Kennedy would not have testified that the contact photo depicted "a guy with two assault rifles." We note that the prosecutor attempted to redirect Deputy Kennedy after he provided that response. Nevertheless, for purposes of our discussion, we will assume the prosecutor failed to properly guard against statements containing inadmissible evidence. (See *ibid.*)

Although defendant objected below, he did not seek a curative instruction. Thus, defendant's claim of prosecutorial misconduct is not preserved for appeal if a " 'jury admonition would have cured the injury. [Citation.]' [Citation.]" (*Tully, supra,* 54 Cal.4th at p. 1010.) Defendant contends that the evidence was so prejudicial that the prosecutor's misconduct could not have been cured by an admonition, thus excusing defense counsel's failure to request an admonition. (See *People v. Arias* (1996) 13 Cal.4th 92, 159 (*Arias*).)

Defendant asserts that Deputy Kennedy's reference to the photograph was "incurably harmful." However, defendant does not support his argument by citing any cases in which an admonition could not have cured the harm caused by prosecutorial

8

miconduct. "A jury will generally be presumed to have followed an admonition to disregard improper evidence or comments, as '[i]t is only in the exceptional case that "the improper subject matter is of such a character that its effect . . . cannot be removed by the court's admonitions." [Citation.]' [Citation.]" (*People v. Pitts* (1990) 223 Cal.App.3d 606, 692 (*Pitts*); see *Arias, supra,* 13 Cal.4th at p. 159 ["we find no misconduct so serious that a curative admonition would have been ineffective"]; *People v. Price* (1991) 1 Cal.4th 324, 460 [rejecting claim that prosecutors committed misconduct during argument on the basis that "any prejudice could have been averted by an admonition"].)

Here, Deputy Kennedy testified he saw a contact photograph associated with defendant's text messages that depicted "a guy with two assault rifles." Under the circumstances, the jury likely inferred that the person in the picture was defendant. However, the improper testimony was "relatively brief" (see *Arias, supra,* 13 Cal.4th at p. 161) and, under the circumstances, not uncurably prejudicial. The evidence at trial overwhelmingly established (via the statements and testimony of Vasquez and Narda) that defendant possessed and shot a semiautomatic firearm on the night of the shooting incident, despite being prohibited from doing so. In light of that evidence, a reference to defendant's prior possession of two assault rifles was not " ' "of such a character that its effect" ' " could not have been " ' "removed" ' " by an admonition. (*Pitts, supra,* 223 Cal.App.3d at p. 692 .)

Defendant also claims that trial counsel was ineffective for failing to press for a ruling on his objection. Defendant contends that if trial counsel had pressed for a ruling, the trial court could have admonished the jury to disregard the evidence or granted a mistrial.

Defendant contends there was no tactical reason for counsel's failure to press for a ruling. (See *Anderson, supra,* 25 Cal.4th at p. 569 [ineffective assistance is shown where there "could be no satisfactory explanation" for counsel's performance].) However, right after trial counsel said, "Objection," the prosecutor attempted to redirect Deputy Kennedy

9

by asking whether he had connected defendant to the text messages "via phone number." Trial counsel could have reasonably determined that the prosecutor had essentially cured the harm and that a request for a ruling on the objection could have served to emphasize the improper testimony. (See *Pitts, supra,* 223 Cal.App.3d at p. 692 ["in some situations an admonition will actually exacerbate the prejudice to the defendant"].)

Moreover, there is no reasonable probability that defendant would have obtained a more favorable result had trial counsel pressed for a ruling on the objection. (See *Anderson, supra,* 25 Cal.4th at p. 569.) It was essentially undisputed that defendant had possessed a semiautomatic firearm on the night of the shooting incident, despite being prohibited from doing so, and that he shot it multiple times. The only issue for the jury was whether defendant had acted with gross negligence. The evidence of gross negligence was very strong: it included Deputy Kennedy's opinion that there was no safe direction to shoot from the location, evidence that the residence was in a populated area near a busy road, Deputy Kennedy's testimony that both Narda P. and Vasquez said defendant had been shooting the gun rapidly and up in the air, and evidence that a neighbor driving by would have been in the line of fire if defendant had not stopped shooting. Under the circumstances, even if trial counsel had no reasonable tactical basis for failing to press for a ruling and admonition, there is no reasonable probability that the jury would have reached a different result or that the trial court would have declared a mistrial. (See *ibid.*)

### B.     *Ineffective Assistance:  Prosecutor's Closing Argument*

Defendant contends that trial counsel was ineffective for failing to object to prosecutorial misconduct—a reference to facts not in evidence and appeals to the jury's passions and prejudice—during closing argument.

#### 1.     Proceedings Below

In closing argument, the prosecutor asserted that defendant had fired the gun into the air. He argued, "Anyone with . . . even a basic understanding of gravity knows

10

what's going to happen. It's coming back down. Every New Year's Eve you always hear about some[one] taking a bullet in the head because people fire in the air."

Later in his closing, the prosecutor argued, "I think it's fair to say that any rational person would have not -- would not have wanted to have been in that area of homes on that day at that time. They wouldn't have wanted to have been there themselves. They wouldn't have wanted to have been driving by on Metz Road. They wouldn't have wanted their children outside. Why? Because of the high danger that was ignored by the defendant in this case."

The prosecutor further argued, "So I'm going to ask you to . . . just inform this defendant you can't do that, you can't do that. Got to think. You got to think about [the] consequences. You have got to think down the road. Think of the obvious possibilities."

### 2. Applicable Law

As the California Supreme Court explained in *People v. Hill* (1998) 17 Cal.4th 800, it is misconduct for a prosecutor to argue facts not in evidence "because such statements 'tend[ ] to make the prosecutor his [or her] own witness—offering unsworn testimony not subject to cross-examination. It has been recognized that such testimony, "although worthless as a matter of law, can be 'dynamite' to the jury because of the special regard the jury has for the prosecutor, thereby effectively circumventing the rules of evidence." [Citations.]' [Citations.] 'Statements of supposed facts not in evidence . . . are a highly prejudicial form of misconduct, and a frequent basis for reversal.' " (*Id.* at p. 828.)

Also, "an appeal to the jury to view the crime through the eyes of the victim is misconduct at the guilt phase of trial; an appeal for sympathy for the victim is out of place during an objective determination of guilt. [Citations.]" (*People v. Stansbury* (1993) 4 Cal.4th 1017, 1057, reversed on other grounds by *Stansbury v. California* (1994) 511 U.S. 318.)

11

### 3. Analysis

Defendant first contends trial counsel was ineffective for failing to object to the prosecutor's argument about people firing guns in the air on New Year's Eve. He contends there was no evidence introduced about that fact and that it is not a matter of common knowledge that, every year on New Year's Eve, bullets hit people in the head because people fire guns into the air.

A similar remark was found not to be misconduct in *People v. Franco* (1994) 24 Cal.App.4th 1528. In that case, during jury voir dire, the prosecutor stated, " 'I think we can all pretty much admit that there is a tremendous gang problem in Los Angeles County, there is a lot of violence. [¶] There is not a day that goes by that you don't open up the Metro Section and read about some senseless drive-by shooting.' " (*Id.* at p. 1535.) The court found that this "stated what is common knowledge." (*Ibid.*) Here, trial counsel could reasonably have determined that the prosecutor's remarks about New Year's Eve shootings likewise were within the jury's common knowledge and were not facts outside the record, such that an objection would not have been successful.

Defendant next contends that the prosecutor's other remarks—that a rational person would not have wanted to be in the area at the time of the shooting and that defendant needed to be told to think about the consequences of his actions—were improper appeals to the jury's passions and prejudices.

Defendant cites to *People v. Pensinger* (1991) 52 Cal.3d 1210, in which the defendant was charged with murdering, kidnapping, and sexually assaulting a five-month-old child. During closing argument, the prosecutor stated, " 'Suppose instead of being [the mother's] kid this had happened to one of your children.' " (*Id.* at p. 1250.) The court found that this was misconduct. (*Ibid.*)

*Pensinger* is distinguishable. Here, defendant's crime had no actual victim. Defendant was charged with discharging a firearm with gross negligence. The prosecutor did not commit misconduct by arguing that defendant acted with gross negligence

12

because there were people in the neighborhood who would not have wanted to have been hit by bullets, or by arguing that defendant should have known that one of the possible consequences of his actions was hitting someone with a bullet.

Even assuming that the prosecutor's remarks were improper, the jury was instructed that the attorney's statements were not evidence and that it should decide the case based only on the evidence presented at trial.[3] "In the absence of evidence to the contrary, we presume the jury understood and followed the court's instructions" and did not base its verdicts on any statement by the prosecutor. (*People v. Williams* (2009) 170 Cal.App.4th 587, 635.) Moreover, as explained above, the only issue for the jury was whether defendant had acted with gross negligence, and that evidence was very strong. Thus, even assuming that trial counsel should have objected to the prosecutor's challenged remarks, there is no reasonable probability that defendant would have obtained a more favorable result; trial counsel was not ineffective. (See *Anderson, supra,* 25 Cal.4th at p. 569.)

### C.    *Probation Condition*

Defendant contends, and the Attorney General concedes, that the trial court erred by imposing a probation condition prohibiting defendant from using or possessing alcohol.

#### 1.    Proceedings Below

The probation report reflected that defendant had a low risk for substance abuse issues, noting that defendant said he had "experimented with alcohol and marijuana" at

---

[3] At the beginning of trial, the jury was instructed, "You must decide what the facts are in this case. You must use only the evidence that is presented in the courtroom. Evidence is the sworn testimony of witnesses, the exhibits admitted into evidence and anything else I tell you to consider as evidence. [¶] . . . [¶] Nothing that the attorneys say is evidence." (See CALCRIM No. 104.) At the end of trial, the jury was instructed, "You must decide what the facts are. It is up to all of you, and you alone, to decide what happened, based only on the evidence that has been presented to you in this trial." (See CALCRIM No. 200.)

age 21 and that defendant denied using or experimenting with any other illicit substances. Nevertheless, the probation report recommended imposition of a probation condition that provided in part: "Do not knowingly use or possess alcohol, intoxicants, or controlled substances without the prescription of a physician . . . ."

At the sentencing hearing, defendant objected to the above probation condition, arguing, "There's no evidence of any alcohol involvement in this matter. It's not related, there is no nexus." The trial court imposed the condition, stating: "Do not knowingly use or possess alcohol, intoxicants, or controlled substances without the prescription of a physician."

### 2. Applicable Law

"We review conditions of probation for abuse of discretion. [Citations.] Generally, '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.]' [Citation.] This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. [Citations.] As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality. [Citation.]" (*People v. Olguin* (2008) 45 Cal.4th 375, 379-380.)

### 3. Analysis

Defendant relies on *People v. Kiddoo* (1990) 225 Cal.App.3d 922 (*Kiddoo*) (disapproved on other grounds in *People v. Welch* (1993) 5 Cal.4th 228, 236-237), in which the court struck a probation condition that prohibited a narcotics offender from possessing or consuming alcohol or frequenting places where alcohol was sold. In *Kiddoo,* the probation report indicated that the defendant had used narcotics and alcohol in the past, but that he "had 'no prior problem,' that he was a social drinker, and used

14

methamphetamine sporadically." (*Id.* at p. 927.) The probation report also indicated that the defendant had two prior convictions, for unlawful taking or driving of a motor vehicle and for possession of marijuana. Both of these prior convictions had occurred more than 10 years before the offense at issue. The appellate court found that there was nothing in the record indicating that alcohol was related to the defendant's narcotic offense, and it found that the condition was not reasonably related to future criminality. (*Id.* at p. 927-928.) Thus, the court found the alcohol-related probation condition was invalid. (*Id.* at p. 928.)

Cases have distinguished or criticized the "fundamental assumptions in *Kiddoo* that alcohol and drug use are not reasonably related and that alcohol use is unrelated to future criminality where the defendant has a history of substance abuse." (*People v. Beal* (1997) 60 Cal.App.4th 84, 87; see also *People v. Balestra* (1999) 76 Cal.App.4th 57, 69 [rejecting challenge to drug testing condition where there was evidence defendant was under the influence of alcohol at the time of the offense]; *People v. Lindsay* (1992) 10 Cal.App.4th 1642, 1644-1645 [rejecting challenge to alcohol-related probation condition where defendant sold cocaine and admitted he had an alcohol problem]; *People v. Smith* (1983) 145 Cal.App.3d 1032, 1034-1035 [rejecting challenge to alcohol-related probation condition where the defendant was convicted of possessing PCP and was under its influence at the time of his arrest due to "the nexus between drug use and alcohol consumption"].) However, in this case, defendant was not convicted of a drug offense, there is no evidence he used drugs, and he had no history of substance abuse.

The Attorney General concedes the challenged condition should be stricken, citing *People v. Burton* (1981) 117 Cal.App.3d 382. In that case, the defendant was convicted of assault with a deadly weapon and by means of force likely to produce great bodily injury after an "on-the-job dispute with a coworker." (*Id.* at p. 389.) The trial court imposed a probation condition that provided, " 'You are not to indulge in the use of intoxicants or visit any place where intoxicants are sold as the primary income of the

15

business . . . .' " (*Ibid.*) The court struck the condition, explaining, "[T]he record is completely devoid of any evidence that appellant had consumed alcoholic beverage prior to, during, or after the assault for which he was convicted. . . . [¶] . . . [B]oth consuming and purchasing alcoholic beverages are legitimate activities for adult persons . . . . [¶] . . . [T]here is no evidence in the record that appellant had ever been convicted of an alcohol-related offense and/or that he had manifested a propensity to become assaultive while drinking." (*Id.* at p. 390.)

In this case, the probation condition is not reasonably related to the crime of which defendant was convicted or to future criminality. He has no alcohol- or drug- related past offenses. He was not drinking or under the influence of alcohol before or during the offense. The only evidence of appellant's alcohol use in the record is defendant's statement to the probation officer that he "experimented with alcohol and marijuana" when he was 21 years old. Defendant denied using or experimenting with any other illicit substances. Thus, the probation condition is invalid to the extent it prohibits defendant from using or possessing alcohol. We will modify the condition to eliminate the reference to "alcohol[ and] intoxicants."

## IV.   DISPOSITION

The probation condition providing, "Do not knowingly use or possess any alcohol, intoxicants or controlled substances without the prescription of a physician" is modified to read as follows:  "Do not knowingly use or possess any controlled substances without the prescription of a physician."  As modified, the judgment is affirmed.

16

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:


_____
ELIA, ACTING P.J.




_____
MIHARA, J.