Filed 1/26/15  P. v. Hayes-Moore CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C072929 |
| v. | (Super. Ct. No. CM036248) |
| BRANDON SIRRON HAYES-MOORE, | |
| Defendant and Appellant. | |

A jury convicted defendant Brandon Sirron Hayes-Moore of inflicting corporal injury on a cohabitant resulting in a traumatic condition.  The trial court suspended imposition of sentence and placed defendant on probation for three years with various terms and conditions, including the condition that defendant refrain from the use or possession of any alcoholic beverage and not knowingly enter any place of business or location where alcohol is the primary item for sale or use.

1

Defendant now contends (1) the trial court failed in its sua sponte duty to instruct on the lesser included offense of battery upon a cohabitant; and (2) imposition of the alcohol probation condition was unlawful.

We conclude (1) the trial court did not have a sua sponte duty to instruct on the lesser included offense because there was no substantial evidence that defendant committed a battery but did not inflict a traumatic condition; and (2) because defendant has two prior cocaine convictions, the probation condition prohibiting alcohol use is reasonably related to future criminality.

We will affirm the judgment.

BACKGROUND

Megan D. and her daughter lived in Chico with defendant and two other roommates in early 2012. Megan had been in a dating relationship with defendant for about a year.

On February 22, 2012, Megan confronted defendant and another woman, Taysha, about the two of them sleeping together. Defendant and Taysha confirmed that they were doing so. Megan struck Taysha. Defendant threw Megan against a wall and choked her with both hands. Megan had bruises on her arms and nail marks and bruises on her neck.

A month later, on March 23, 2012, defendant and Megan met at her apartment to talk. Defendant became angry because Megan packed up his belongings while he was away. Megan said she wanted him to leave and did not want to be with him. Defendant grabbed Megan's arms, shook her, slapped her on the cheek and bit her twice on the mouth.

On March 29, 2012, Megan turned off the service for defendant's cellular telephone. Around 10:00 p.m., defendant arrived at Megan's residence. He said, "You win. I'm leaving," and then he asked, "Oh, you turned [my] cell phone off?" Defendant became angry and yelled at Megan. He said he was "going to F [her] up." Megan responded that someone was going to call the police. Defendant said, "I got my 9

2

[millimeter gun]. I will kill you and your whole family." At that point Megan did not believe defendant had the gun on his person; she believed he was just "yelling stupid stuff." She did not think he was going to shoot her but she was nervous because her daughter was in the house. Megan sent her friend a text message asking her to call the police.

Defendant swung a pair of scissors at Megan. She believed his intent in swinging the scissors was to scare her. But the scissors made contact with Megan's purse and Megan felt "very threatened" by defendant. Defendant slammed Megan against the bathroom cupboards and choked her for about 40 seconds.

The police knocked on the door. Defendant released Megan and told her to shut up and not say anything.

Megan had injuries and bruises on her arms and legs and bruising on her left wrist. A responding officer observed a contusion on her lower lip. Megan testified that the injury to her mouth was from when her face hit the cabinet or something in the bathroom on March 29, 2012. She did not recall telling an investigator four days after the incident that defendant had bit her on the lip. But Megan acknowledged that if she told the investigator about the bite on the lip, "then, it's probably what I remembered." By the time of trial, Megan did not remember defendant biting her face on March 29, 2012. However, Butte County District Attorney's investigator Tanya Houston testified that on April 3, 2012, Megan told her defendant bit her on the lip on March 29, 2012. Megan showed Houston the injuries she received that date and Houston photographed them. Houston saw no bruising of the neck.

The People charged defendant only with the conduct on March 29, 2012. The complaint charged him with inflicting corporal injury on a cohabitant resulting in a

3

traumatic condition (Pen. Code, § 273.5, subd. (a)[1] -- count 1), criminal threats (§ 422 -- count 2), and dissuading a witness by force (§ 136.1, subd. (c)(1) -- count 3).

Although the defense declined to request jury instructions on lesser included offenses, during deliberations the jury inquired whether the trial court would consider a lesser charge of simple battery on count 1. (§ 242.) Defense counsel asked that the jury be so instructed. The trial court refused, ruling there was no substantial evidence to support the instruction. The jury convicted defendant on count 1 but found him not guilty on counts 2 and 3.

The trial court suspended imposition of sentence and placed defendant on probation for three years with various terms and conditions. Over defendant's objection, the trial court imposed a probation condition that defendant "[t]otally refrain from the use or possession of any alcoholic beverage and not knowingly enter any place of business or location where alcohol is the primary item for sale or use. Do not ingest or use any item containing alcohol."

## DISCUSSION

### I

Defendant contends the trial court failed in its sua sponte duty to instruct on the lesser included offense of battery upon a cohabitant. (§ 243, subd. (e)(1).) He argues the instruction was required because the evidence raised a reasonable doubt whether defendant had inflicted the traumatic condition required for the charged offense.

### A

"A trial court must instruct on all lesser included offenses supported by substantial evidence. [Citations.] The duty applies whenever there is evidence in the record from

---

[1] Undesignated statutory references are to the Penal Code.

4

which a reasonable jury could conclude the defendant is guilty of the lesser, but not the greater, offense. [Citations.]" (*People v. Duff* (2014) 58 Cal.4th 527, 561.)

"[T]he existence of 'any evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser offense, but not the greater, was committed. [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).)

Section 273.5, subdivision (a), provides in relevant part: "Any person who willfully inflicts corporal injury resulting in a traumatic condition upon a victim described in subdivision (b) is guilty of a felony." Subdivision (d) of the statute provides in relevant part: " '[T]raumatic condition' means a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force."

"A battery is any willful and unlawful use of force or violence upon the person of another." (§ 242.) Section 243, subdivision (e)(1), provides for specified punishment when a battery is committed against a cohabitant. In this case it is undisputed that defendant and Megan were cohabitants. Battery against a cohabitant in violation of section 243, subdivision (e)(1), is a lesser included offense of inflicting an injury on a cohabitant that resulted in a traumatic condition in violation of section 273.5. (*People v. Jackson* (2000) 77 Cal.App.4th 574, 580.)

During the instructions conference, defense counsel declined to request any instructions on lesser included offenses. Then, in closing argument, the prosecutor addressed the count 1 charge of corporal injury on a cohabitant resulting in a traumatic condition:

5

"We know that we have a traumatic condition in this particular case. In fact, we have several. The traumatic condition is either a wound or some other bodily injury or red mark, or some condition of the body that is not normal. It can be serious or minor. In this case, we have bruising and injury to the lip.

"And it must be caused by physical force. And we know that these injuries were caused by physical force because that's what Megan told us. And it's consistent with the injuries that we see. We can use our own experience and own ideas and our own life experiences to evaluate this evidence.

"And when you see the injuries that you will see in the evidence, it's clear that these are injuries that were caused by physical force. There was the injury to her lip. There were several bruises on her arms and legs, and then also you can consider her testimony regarding strangulation or suffocation. As you recall, the defendant was holding her neck and causing her to not be able to breathe. [¶] . . . [¶]

"You will be able to take into the jury room the actual photographs of Megan. This will go in the jury room. She testified that there [*sic*] were the injuries that the defendant inflicted upon her and Officer Dane Gregory took the photographs as he testified to.

"The next photograph -- again, I'm not terribly good on the screen -- as you'll be able to see, during the the [*sic*] testimony Megan circled these injuries so that you can focus in on those. And I'll show you on screen as well.

"Inside [the] blue circle is [*sic*] the injuries, and keep in mind these were taken several days after the attack so they were able to develop by that time, and that's People's 2 through 6, and 5 and 6 are on her leg, and 2 through 3 are of her arms.

"I'll click through these. You can kind of see them. This medium isn't terribly good for this type of -- that's a little bit better."

In his summation, defense counsel argued that Megan had made up "false allegations against" defendant, her boyfriend. Acknowledging that Megan had told

6

investigator Houston that defendant had bitten her lip on March 29, 2012, defense counsel argued "[s]he told you on the witness stand that that isn't what happened. Why is that? [¶] It's clearly not a bite. Is that because she is afraid? Or is it because she has told so many lies she can't keep them straight?"

Defense counsel further argued: "You remember how Megan told you that on March 29th, in addition to all the other assaultive conduct that [defendant] has supposedly had done that day, that he grabbed her by the throat, held her down. She couldn't recall if it was one or [two] hands, but he had her [by] the throat and he was strangling her for 40 seconds to a point where she couldn't breath[e]. Almost passed out.

"Officer Gregory testified, as far as the injuries he saw, that there was a contusion to the lip. No indication of any type of injury to her throat.

"When Investigator Houston met with her a few days later, took the photographs, no bruising around the throat. There was some small bruising, different extremities. Very similar to what Megan had when she testified here a few days ago. You need to ask yourself, how believable is that?"

Defense counsel continued: "She is inconsistent. She has been caught telling the DA's investigators, the Chico police officer something different than what she told us on the witness stand.

"She's tried to tell the police and Investigator Houston that she was bit, and we have pictures and we know that's not so. You can use your common sense to evaluate some of these things.

"And she claims that [defendant] strangled her for 40 seconds. That's not an insignificant period of time. And she is almost ready to pass out from loss of oxygen, and there's absolutely no bruising. Nothing. That is totally unbelievable, and it is not true. It's simply not true."

During deliberations, the jury asked the trial court: "Would you consider a lesser charge of simple battery on count 1?" Although the jury had not been instructed on the

7

principles of lesser included offenses, it had been instructed on the elements of simple battery because Megan admitted committing acts constituting the offense and the jury was instructed that it could consider that fact in assessing Megan's credibility.

The trial court proposed to instruct the jury that there were no lesser charges for the jury to consider. Defense counsel asked the court to allow the jury to consider simple battery as a lesser included offense. The prosecutor responded that the only difference was the element of traumatic injury and there was evidence of such injury.

The trial court noted it had "inquired of counsel whether they were requesting lesser offenses prior to settling the jury instructions and argument. None were requested. Additionally, the Court on its own analyzed the state of the evidence and determined that there was not substantial evidence to warrant consideration that the defendant is guilty of the lesser offenses. [¶] It appears to the Court that should the jury find [Megan] credible, then all elements would be met, and it appears to the Court that from the state of the evidence that a lesser included is not warranted on state of the evidence before it; so I'm declining counsel's request to submit a new lesser offense to the jury at this phase in the proceedings, and the Court would intend to answer the juror's inquiry as I previously indicated."

B

Defendant contends it was possible for the jury to find that he committed a battery upon Megan on March 29, 2012, while having a reasonable doubt whether she sustained traumatic injury. He relies on Megan's testimony that he bit her lip on March 23 and the injury to her lip on March 29 was caused by her head hitting something in the bathroom.

According to the evidence, Megan said different things at different times regarding the injury to her lip. Defendant is correct that the jury was entitled to believe some portions of Megan's testimony while disbelieving other portions (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67-68; CALCRIM No. 105), and the jury may have disbelieved Megan's testimony regarding counts 2 and 3. Moreover, there is no evidence

8

of bruising on Megan's neck following the March 29 incident.  But there is undisputed evidence that Megan had bruises on her arms, legs and left wrist after the March 29 attack.  The prosecutor referenced that bruising in closing argument as evidence of a traumatic condition.  Defense counsel acknowledged those bruises in closing argument and did not argue that they were caused during a prior incident.

Section 273.5, subdivision (d) states that a traumatic condition includes a minor external or internal injury caused by a physical force.  Megan's bruising falls within that definition.  Defendant argues the jury could have had a reasonable doubt whether defendant inflicted a traumatic condition on March 29.  But the jury found defendant guilty on count 1 beyond a reasonable doubt.  The trial court instructed the jury that if it had a reasonable doubt about whether defendant inflicted a traumatic condition, it must find defendant not guilty on count 1.  We assume the jury followed the trial court's instructions.

On this record, as the trial court found after its own review of the evidence, there is no substantial evidence that defendant committed a battery on Megan on March 29 but that he did not inflict a traumatic condition on her.  Accordingly, the trial court did not have a sua sponte duty to instruct on battery as a lesser included offense.

II

Defendant contends imposition of the alcohol probation condition was unlawful.

A

The probation department recommended two probation conditions related to alcohol use by defendant.  Special condition 5 stated:  "Totally refrain from the use or possession of any alcoholic beverages and not knowingly enter any place of business or location where alcohol is the primary item for sale or use.  Do not ingest or use any item containing alcohol."  In addition, special condition 20 stated in relevant part:  "You are to enter and complete a residential substance abuse treatment program as specifically

9

approved by your probation officer . . . . While in the program, you are subject to warrantless search and drug/alcohol testing by program staff."

Defendant objected to Special Condition Number 5, stating: "I don't recall there being any evidence whatsoever that this case had any impact because of alcohol use by" defendant. "And the same objection to Special Condition Number 20, residential treatment. Again, I don't believe there was any evidence that would warrant that particular condition."

The prosecutor, who had not conducted the jury trial, submitted the matters to the trial court.

The probation officer stated: "Regarding his drug use, I know there was no special indication that he was under the influence of anything when he did violently assault the victim, however, he did sustain a conviction for possession of cocaine as recent as 2010. In an effort for him to obtain a clear rationale [*sic*] thought and not assault anyone else, we would prefer he not be under the influence of anything. [¶] Regarding number 20, if the Court is inclined to leave it to probation's discretion, and if he tests dirty, then we would have discretion to order him into the treatment that would be an option."

The trial court ruled: "Special Condition[s] 3, 4, 5. I considered counsel's argument with regards to alcohol. The Court considered the testimony at the trial as well as the defendant's information to the probation department wherein he explained his prior use of alcohol and prior use [of] cocaine. There was a conviction for possession of cocaine as recent as January 28th of 2010 and a prior conviction from January 22nd of 2009. [¶] If I recall from the testimony, there was some discord regarding defendant's lack of responsibility in leaving the area to go down to, I think, Lake Havasu [f]or spring break type activities just prior to this incident. And it's the Court's view that because of his prior convictions and prior use of alcohol and controlled substances, that an order to assist him in his rehabilitative efforts discontinuation of those activities would help to

10

ensure crime free conduct during his probationary period and beyond and also successfully complete the Batterer's Treatment Program which the Court will be ordering."

B

The trial court may impose any "reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . ." (§ 1203.1, subd. (j).)  The trial court has broad discretion in setting the terms and conditions of probation.  (*People v. Olguin* (2008) 45 Cal.4th 375, 379.)

" '[A] condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality.'  [Citation.]  'A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, *and* (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." '  [Citation.]  'This test is conjunctive -- all three prongs must be satisfied before a reviewing court will invalidate a probation term.' "  (*In re T.C.* (2009) 173 Cal.App.4th 837, 845-846.)

"Whether an alcohol-use condition of probation is an abuse of the trial court's discretion is determined by the particular facts of each case."  (*People v. Lindsay* (1992) 10 Cal.App.4th 1642, 1644 (*Lindsay*).)  Several cases have found the condition valid when the defendant has a history of drug abuse and the current offense involves drugs. (*People v. Beal* (1997) 60 Cal.App.4th 84, 86-87 (*Beal*); *Lindsay, supra*, 10 Cal.App.4th at pp. 1644-1645; *People v. Smith* (1983) 145 Cal.App.3d 1032, 1034; see also *People v. Balestra* (1999) 76 Cal.App.4th 57, 64, 68-69 (*Balestra*) [drug testing upheld for a defendant whose offense involved alcohol]; cf. *People v. Burton* (1981) 117 Cal.App.3d 382, 389-391 [no-alcohol condition invalid because offense was not alcohol related and

11

no evidence defendant had been convicted of an alcohol-related offense].)  As one court explained:  "[E]mpirical evidence shows that there is a nexus between drug use and alcohol consumption.  It is well documented that the use of alcohol lessens self-control and thus may create a situation where the user has reduced ability to stay away from drugs.  [Citation.]  Presumably for this very reason, the vast majority of drug treatment programs . . . require abstinence from alcohol use."  (*Beal*, *supra*, 60 Cal.App.4th at p. 87**.**)

On the other hand, a no-alcohol probation condition was held invalid in *People v. Kiddoo* (1990) 225 Cal.App.3d 922 (*Kiddoo*), a case involving a conviction for possession of a controlled substance.  However, in that case, the defendant reportedly became involved in the sale of drugs to support his gambling habit, maintaining he was a social drinker and used methamphetamine only sporadically.  The appellate court struck the condition, concluding there was no evidence that alcohol use by the defendant was "reasonably related to future criminal behavior."  (*Id.* at p. 928.)  *Kiddoo* has been criticized in subsequent cases for its "fundamental assumptions . . . that alcohol and drug abuse are not reasonably related and that alcohol use is unrelated to future criminality where the defendant has a history of substance abuse."  (*Beal*, *supra*, 60 Cal.App.4th at p. 87**;** *Balestra*, *supra*, 76 Cal.App.4th at p. 68.)

Here, defendant's history reflects a January 2009 Oregon conviction for unlawful delivery of cocaine and a January 2010 Oregon conviction for unlawful possession of cocaine.  Defendant claims this history is insufficient to support the alcohol condition, citing *Kiddoo*.  We conclude, however, that because defendant has two prior cocaine convictions, the probation condition prohibiting alcohol use is reasonably related to future criminality.  (See *Beal*, *supra*, 60 Cal.App.4th at p. 87**;** *Balestra*, *supra*, 76 Cal.App.4th at p. 68.)  We thus decline to invalidate the condition.  (*In re T.C., supra,* 173 Cal.App.4th at pp. 845-846.)  Accordingly, it is not necessary to consider defendant's

argument that there was insufficient evidence of alcohol use with respect to the present offense.

## DISPOSITION

The judgment is affirmed.


                                          MAURO             , J.


We concur:


_____RAYE_____, P. J.


_____MURRAY_____, J.