Filed 10/29/14  P. v. Firestone CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHN PAUL FIRESTONE,<br><br>Defendant and Appellant. | D064875<br><br><br><br>(Super. Ct. No. SCD248479) |

APPEAL from a judgment of the Superior Court of San Diego County, Robert F. O'Neill, Judge.  Affirmed.

Jill Kent, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood, Meagan J. Beale and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

John Paul Firestone appeals from a judgment convicting him of vandalism.  He argues the trial court erred by (1) admitting evidence of his uncharged misconduct, and

(2) imposing overbroad conditions of mandatory supervision.  We reject his contentions of reversible error and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The vandalism incident giving rise to defendant's conviction occurred around 1:30 a.m. on June 2, 2013, when a man (later identified as defendant) threw an object and shattered a large glass front window of a store located next to a bar.  Two witnesses (William Reaves and Jason Bue) observed defendant at the scene and watched him flee after the glass shattered.

Reaves and Bue, who were at the bar next to the store, noticed defendant earlier that night because defendant had been escorted from the bar after "causing problems" and defendant kept trying to get back into the bar.  When the bar's security guard first asked defendant to leave, defendant put up "a little argument" but did eventually leave.  A short time later, defendant returned to the sidewalk by the bar and tried to grab a drink from a table on the patio.  The security guard again asked defendant to leave.  In another attempt to enter the bar, defendant tried to get past the security guard by flashing something and claiming he was "a special agent, FBI officer."

At the time the object was thrown at the window, Bue was standing outside the bar's entrance.  Bue saw defendant walk by and then saw him standing "directly in front of the [store] window."  Bue looked at defendant's face, and then saw his arms swinging, as if he was throwing something forward.  Although Bue could not discern what, if anything, defendant had in his hand, the next moment there was a loud shatter and Bue

2

saw "glass going everywhere." Bue and defendant made eye contact; defendant started running away; and Bue chased after him, yelling "Stop."

Meanwhile, Reaves, who was still inside the bar, heard the sound of glass shattering, and when he came outside to investigate, "there was only one person there," defendant. Reaves saw defendant start to run away; he called 911; and he joined Bue in the chase after defendant.

Bue was able to briefly detain defendant, but let him go when he continued to struggle. Shortly after, the police arrived; Bue directed them in the direction defendant was running; and the police detained defendant. Bue identified defendant as the person he had seen swinging his arms by the storefront window when the glass shattered. Likewise, Reaves spoke to the police about what he had seen.

Reaves and Bue testified that when they observed defendant that night, he seemed drunk or high; he was "saying a bunch of gibberish and mumbling a lot"; and his behavior was "not something you would see from an everyday person in public."

*Jury Verdict and Sentence*

Defendant was charged with felony vandalism, and the jury convicted him as charged. The court sentenced him to a four-year prison term (three years for vandalism and one year for a prior prison term enhancement). The court ordered that his prison term be served as a split sentence consisting of two years in jail followed by release under mandatory supervision for two years.

3

DISCUSSION

I. *Admission of Evidence of Defendant's Prior Acts of Vandalism*

A. *Background*

Prior to trial, the prosecution filed a motion requesting that the court allow admission of defendant's two prior convictions for vandalism to prove defendant's identity and intent. The prosecutor told the court that in the first incident defendant kicked out the window of a patrol car; in the second incident he kicked and broke the glass front door of a business; and during at least one of the incidents he had been drinking. The prosecutor argued the prior incidents were similar to the current charged incident because they both involved defendant breaking glass. Defense counsel objected to admission of the evidence, arguing the prior incidents were not sufficiently similar and were more prejudicial than probative. The court ruled the evidence was admissible, stating it was highly probative and that it had weighed the evidence under Evidence Code section 352.

At trial, the parties agreed that the prior misconduct evidence would be presented to the jury by means of a stipulation. The jury was provided with the following stipulation: " 'On two previous occasions in 2012, the defendant was convicted of vandalism arising out of incidents where he damaged or destroyed property. [¶] Incident One: Defendant damaged *a metal door lever*. [¶] Incident Two: Defendant damaged *a police car window*.' " (Italics added.) Concerning the use of the prior misconduct evidence, the jury was instructed that, if it found the defendant committed the uncharged offenses, it could consider the "evidence for the limited purpose of deciding whether or

4

not the defendant was the person who committed the offense alleged in this case or the defendant had a motive to commit the offense alleged in this case or the defendant knew what would happen when he allegedly acted in this case."

B.  *Governing Law*

Evidence of the defendant's misconduct that is not charged in the current case is generally inadmissible for purposes of showing the defendant's bad character or propensity to commit crimes.  (Evid. Code, § 1101, subd. (a); *People v. Kipp* (1998) 18 Cal.4th 349, 369.)  However, uncharged misconduct evidence may be admitted for the limited purpose of proving material facts apart from criminal disposition, such as identity, intent, or motive.  (Evid. Code, § 1101, subd. (b); *People v. Kipp, supra*, at p. 369.)  For the evidence to be admissible, the conduct during the uncharged and charged acts must be sufficiently similar to support a rational inference of facts such as identity, intent or motive.  (*People v. Kipp, supra*, at p. 369.)  To be relevant on the issue of identity, the uncharged and charged misconduct must be highly similar; i.e., they must share common marks that are sufficiently distinctive to be like a signature that sets them apart from crimes of the same general variety, thereby suggesting the offenses were committed by the same perpetrator.  (*Id*. at p. 370; *People v. Miller* (1990) 50 Cal.3d 954, 987.)  A lesser degree of similarity is required on the issues of intent or motive, but the uncharged misconduct must be sufficiently similar to support the inference that the defendant probably harbored the same intent or had a common motive in each instance.  (*Miller, supra*, at p. 987; *People v. Demetrulias* (2006) 39 Cal.4th 1, 15.)

5

Further, because of the prejudice inherent in uncharged misconduct evidence, the evidence must have substantial probative value, and the trial court must evaluate under Evidence Code section 352 whether the probative value is outweighed by the probability of undue prejudice, confusing the issues, or misleading the jury. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404; *People v. Kipp, supra*, 18 Cal.4th at p. 371.) We review the trial court's rulings for abuse of discretion. (*Kipp, supra*, at pp. 369, 371.)

C. *Analysis*

Defendant argues the court abused its discretion in admitting the evidence of his prior vandalism convictions because there was an insufficient showing of similarity between his prior offenses and the current charged offense to support relevancy, and the inaccuracy and sparseness of information concerning the prior offenses did not allow for a proper balancing of probative value against prejudicial effect. We agree, but find the error harmless.

At the pretrial hearing, the prosecutor told the court that both of the uncharged offenses involved defendant *breaking glass*, but the stipulation submitted to the jury described only one offense as involving damage to glass, whereas the other offense involved damage to a metal door lever. Also, the details provided by the prosecutor concerning the offense involving damage to glass were sketchy, indicating that defendant kicked out the window of a patrol car. Without greater specificity concerning the facts of the prior offenses, there was not enough information for the trial court to determine whether the past acts were sufficiently similar to the current vandalism to support rational inferences of intent, identity, or motive and that the probative value of the evidence

6

outweighed the potential for prejudice.  This conclusion is particularly apropos to the issue of identity, which requires a high degree of similarity akin to a signature.

However, reversal is not warranted because there is no reasonable probability the verdict would have been more favorable to defendant absent any error.  (*People v. Carter* (2005) 36 Cal.4th 1114, 1152).[1]  Two eyewitnesses saw defendant throughout the evening, as he repeatedly tried to gain access to the bar.  After defendant was refused entry a final time, Bue saw him walk by the entry to the bar and stop in front of the storefront.  He then saw him wave his arms in front of the window, as if throwing something, and seconds later the window shattered.  When Bue and defendant made eye contact, defendant fled the scene.

Reaves heard the window shatter from inside the bar, and then he, too, saw defendant fleeing the scene.  Reaves did not see anyone else in the vicinity of the store when the window shattered.  Also, there was no suggestion that defendant was doing anything in the area that could support that his act of breaking the window was unintentional.  Further, defendant's flight immediately after the breakage created a strong inference of a guilty conscience.  The record firmly established that defendant was the person who broke the window, and that his conduct was volitional.  Given the overwhelming evidence of guilt, there is no reasonable probability the jury would have

---

[1]  Defendant's contention that the erroneous admission of uncharged misconduct evidence should be evaluated under the harmless beyond a reasonable doubt standard for federal constitutional error is unavailing.  (See *People v. Jandres* (2014) 226 Cal.App.4th 340, 357.)

7

reached a verdict more favorable to defendant had it not heard about his prior vandalism convictions.

## II. *Mandatory Supervision Conditions*

Defendant's mandatory supervision conditions include a term stating: "Obtain [Probation Officer] approval as to . . . residence [and] . . . employment." Defendant argues that these conditions are unconstitutionally overbroad because they allow the probation department unlimited authority to refuse to approve his residence or job without guidelines for the exercise of that authority, and because they impair his already limited ability to find housing and work. Although defendant did not object to these conditions before the trial court, we will exercise our discretion to consider his contention to the extent it presents a constitutional challenge on undisputed facts and involves pure questions of law. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 887, & fn.7.)

A trial court has broad discretion to select probation conditions. (*People v. Olguin* (2008) 45 Cal.4th 375, 379.) Generally, a probation condition that regulates noncriminal conduct is not an abuse of discretion if it is reasonably related to (1) the crime of which the defendant was convicted or (2) the goal of preventing future criminality. (*Id.* at pp. 379-380; *People v. Balestra* (1999) 76 Cal.App.4th 57, 65.) To avoid unconstitutional overbreadth, a " 'probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition . . . .' " (*People v. Olguin, supra*, 45 Cal.4th at p. 384.) Further, all probation conditions are subject to a general requirement of reasonableness. (See *People v. Welch* (1993) 5 Cal.4th 228, 233.)

8

At sentencing, the trial court noted that defendant is an alcoholic, and although he is only 25 years old, he has accumulated 31 arrests and convictions. Defendant told the court that his past probation violations arose from situations in which he "didn't have a probation officer . . . [to] . . . check in with to kind of guide [him] . . . along," and that he "would like to make the best of the situation." Thus, defendant recognized that he would benefit from monitoring by a probation officer to help him maintain sobriety and stop his repetitive criminal conduct.

When a defendant suffers from alcoholism and has incurred numerous criminal convictions, it is not unreasonable to impose conditions that allow the probation officer to approve the defendant's place of residency and employment to ensure that he or she is not in an alcohol-conducive or criminally-oriented environment. Likewise, because lifestyle choices related to work or housing can heighten the risk of alcohol use or criminality, a probation approval requirement for residence and employment selections is closely tailored to meet the goals of sobriety and crime avoidance.

Defendant requests that we change the employment and residency approval requirements to a *notification* requirement so that he does not lose a job or housing opportunity because he first has to get probation approval. Assuming that the probation department requires that a defendant obtain approval *before* he or she accepts a job or housing offer and/or starts working or living at a particular site, this type of monitoring system does not as a matter of law rise to the level of constitutional overbreadth or an abuse of discretion. For example, there may be cases where preapproval is imperative because the defendant has a tendency to quickly succumb to substance abuse or a

9

criminal lifestyle in certain types of environments. Because defendant did not ask the trial court to confine the approval condition to a postselection notification system, his request to narrow the condition in this manner is not reviewable in the first instance at the appellate level.

Finally, defendant's citation to *People v. Bauer* (1989) 211 Cal.App.3d 937, 944 does not alter our conclusion. The *Bauer* court struck a residency approval requirement in a case that raised a concern that the condition was designed to keep the defendant from living with his parents, which the court did not view as reasonably related to his crime or prevention of future criminality. (*Id.* at p. 944.) This circumstance is not present here.

Defendant has not shown that his conditions of mandatory supervision are constitutionally overbroad.

## DISPOSITION

The judgment is affirmed.

HALLER, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.

10