Filed 2/26/16  P. v. Wyatt CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RUDOLPH WILLIAM WYATT,<br><br>    Defendant and Appellant. | A144604<br><br>(Marin County<br>Super. Ct. No. SC189769A) |

**I.**

**INTRODUCTION**

Appellant Rudolph William Wyatt appeals from a judgment of conviction for receiving stolen property.  He argues that the trial court abused its discretion in imposing conditions of mandatory supervision requiring that he submit to periodic chemical testing for nonprescribed drugs and alcohol, and that he participate in substance abuse treatment or counseling.  We conclude the conditions were reasonably related to Wyatt's rehabilitation and the prevention of future crimes, and therefore, we affirm.

**II.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 19, 2014, a College of Marin Police officer received a call that two individuals had their bags stolen while playing tennis.  The bags contained personal items, money, and an iPhone.  The victims used another iPhone to track the location of the missing phone.  Officers tracked the phone and followed Wyatt, who was riding a bicycle and carrying a "Head" tennis bag.  Despite officers using the lights on their cars,

1

Wyatt ignored and evaded them. Wyatt was ultimately located in a building near the Larkspur Ferry hiding in a closet. He was found with the victims' property and another bag taken from a motorcycle parked on campus, and a backpack. The total value of the stolen items was approximately $3,000.

The Marin County District Attorney's Office filed an information charging Wyatt with receipt of stolen property in violation of Penal Code section 496, subdivision (a),[1] grand theft of personal property in violation of section 487, subdivision (a), resisting a peace officer in violation of section 148, subdivision (a)(1), and disobeying a peace officer in violation Vehicle Code section 2800, subdivision (a). The information alleged Wyatt had 10 prison prior convictions.

Wyatt pleaded guilty to receiving stolen property and admitted two prison prior convictions. Wyatt was released on his own recognizance and ordered to appear for sentencing on December 11, 2014. Wyatt failed to appear and a warrant was issued for his arrest.

On March 18, 2015, Wyatt pleaded guilty to failure to appear, in violation of section 1320, subdivision (b), and admitted he violated the terms of his plea agreement.

The probation department's presentence report noted that Wyatt had been convicted of a narcotics offense in 1997, charged with a narcotics offense in 2003, and suffered a parole violation for a narcotics offense in 2004. The report concluded that Wyatt had "significant difficulty staying in compliance." "Since his release from prison, the defendant has repeatedly absconded from [supervision] resulting in eight warrants being issued. He has served three [] revocation jail terms, four 'flash' incarcerations and failed to complete directed programs."

The report documented Wyatt's use of methamphetamine in January 2015 and that he had a "meth pipe" when he was arrested on that occasion. He admitted to using marijuana on a daily basis. The report concluded that Wyatt has failed to take advantage of prior grants of probation, and the prognosis for his rehabilitation was "poor" due to his

---

[1] All subsequent references are to the Penal Code unless otherwise identified.

unstable lifestyle. The report recommended restrictions on Wyatt's use of alcohol and narcotics, chemical testing, and participation in treatment as directed by his probation officer.

At Wyatt's sentencing hearing, the court stated it had reviewed the presentence report. It imposed a split sentence of five years with 237 days of presentence custody credit, and the remaining time on mandatory supervision.

Wyatt raised objections to "the treatment and the alcohol and drug terms." Wyatt objected to the condition prohibiting him from possession or consumption of alcohol, nonprescription medications, and medicinal marijuana. He further objected to participation in any treatment or counseling and chemical testing. He argued: "This was a case not involving drugs or alcohol. And those proposed terms don't have any rational relationship to the facts of conviction."

The court inquired whether Wyatt was under the influence at the time of the offense, and both counsel responded there was no evidence that he was. The prosecutor noted that Wyatt had used methamphetamine in the past on a weekly basis and had used it as recently as January 2015. The court responded, "[T]his is a prison commitment. Why is it not appropriate that as a part of a prison commitment the defendant be prohibited from using, possessing or transporting alcohol, nonprescribed drugs, illegal drugs, or paraphernalia?" Wyatt argued that alcohol is not illegal and it was unrelated to the reason he was on supervision. His last drug conviction was in 2004 and Wyatt had stated he does not consume alcohol. Counsel stated: "This is not a drug case. And I understand what the Court is saying, he's effectively a state prisoner, but in reality he's not, he's out in the community."

The court stated it was prepared to strike the alcohol prohibition, but "he shouldn't have nonprescribed drugs. That is a crime in and of itself. He shouldn't have associated paraphernalia for the same reason. He's not authorized to use marijuana at this time. So that should also be part of his conditions. If not I can just sentence him to state prison. That's fine."

3

Counsel responded: "We're fine with that." He then argued that Wyatt would like the opportunity to use medical marijuana. The court stated he could make that request if he provided a proper prescription indicating why he needs it.

The court ordered: "You are prohibited from using, possessing, or transporting any nonprescribed drugs, illegal drugs, associated paraphernalia, including marijuana, unless authorized by this Court. You will be subject to chemical testing at the request of any peace officer or probation officer to determine your drug and/or alcohol content." The court also ordered Wyatt to "participate in any treatment, therapy, or counseling, including residential treatment, as directed by probation."

## III.
## DISCUSSION

Wyatt argues that the trial court abused its discretion in imposing chemical testing and his participation in treatment as conditions of mandatory supervision. His principal contention is that the conditions are improper because his current offense was not drug related, and he had only two prior convictions for drug offenses, the most recent in 2004.

Mandatory supervision is akin to a jail commitment, not a grant of probation. (*People v. Fandinola* (2013) 221 Cal.App.4th 1415, 1422 (*Fandinola*).) "[A]lthough supervised release is to be monitored by county probation officers 'in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation' (§ 1170, subd. (h)(5)(B)(i)), 'this does not mean placing a defendant on mandatory supervision is the equivalent of granting probation or giving a conditional sentence. Indeed, section 1170, subdivision (h), comes into play only after probation has been denied.'. . ." (*People v. Martinez* (2014) 226 Cal.App.4th 759, 762-763 (*Martinez*), citing *Fandinola*, at p. 1422.) Mandatory supervision is more similar to parole than probation and thus, we analyze it under standards analogous to conditions of parole. (*Fandinola*, at p. 1423.)

Conditions of parole are designed to end criminality, help reintegration into society, and promote rehabilitation. (*In re Stevens* (2004) 119 Cal.App.4th 1228, 1233.)

Conditions "must be reasonably related to the compelling state interest of fostering a law-abiding lifestyle in the parolee. [Citation.]" (*Id.* at p. 1234.)

The validity and reasonableness of parole conditions is analyzed under the same standard as that developed for probation conditions. (*Martinez*, *supra*, 226 Cal.App.4th at p. 764; *In re Stevens*, *supra*, 119 Cal.App.4th at p. 1233 ["The criteria for assessing the constitutionality of conditions of probation also applies to conditions of parole."].)

We review the conditions of mandatory supervision for an abuse of discretion. (*Martinez*, s*upra*, 226 Cal.App.4th at p. 764; *People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).) When reviewing for abuse of discretion we will not generally hold the condition invalid " 'unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.]' [Citation.]" (*Olguin*, at p. 379.) Even if a condition of probation "has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality. [Citation.]" (*Id.* at pp. 379-380.)

We first address Wyatt's objection to the condition that he submit to periodic chemical testing for drugs and alcohol.[2] As noted, Wyatt claims his conviction did not involve drugs or alcohol and therefore, the probation condition is not reasonably related

---

[2] Wyatt contends the issue is cognizable on appeal despite the fact that counsel seemed to accept the conditions before the trial court. After objecting to both conditions raised here, the court stated if Wyatt was not amenable to the conditions, it could "just sentence him to state prison." Counsel responded: "We're fine with that." Respondent fails to address the issue in its brief.

The reasonableness of a condition of supervised release may be challenged on appeal only if the defendant objected on that basis in the trial court. (*People v. Welch* (1993) 5 Cal.4th 228, 237; see *In re Sheena K.* (2007) 40 Cal.4th 875, 882.)

We address the issue on the merits, finding counsel has not waived the issue by agreeing to the conditions rather than a prison sentence. Counsel argued the issue before the trial court and the trial court rejected counsel's arguments. Thus, the issue is not being raised for the first time on appeal.

5

to the crime for which he was convicted. But, even if that is so, the assertion relates only to one of the three factors justifying imposition of a parole condition set forth in *Olguin.* In order to invalidate a condition of probation all three factors must be found to be present. (*People v. Lent* (1975) 15 Cal.3d 481, 486, fn. 1 (*Lent*); *People v. Balestra* (1999) 76 Cal.App.4th 57, 65, fn. 1 (*Balestra*).)

The condition related directly to monitoring and preventing Wyatt's potential for future criminality and to promote his rehabilitation. Wyatt had prior narcotics convictions in 1997 and 2003, and suffered a parole violation for a narcotics offense in 2004. He admitted to using methamphetamine while this case was pending in January 2015, and had drug paraphernalia in his possession when he was arrested on the bench warrant. He also admitted to using marijuana on a daily basis.

In *Balestra*, the court upheld drug and alcohol testing conditions for a defendant convicted of physically abusing her mother. (*Balestra*, *supra*, 76 Cal.App.4th at pp. 60-62, 68.) The victim reported that her daughter had come home smelling of alcohol the evening of the attack. (*Id.* at p. 61.) As in this case, the defendant specifically challenged the drug testing because no drugs had been involved in the offense. (*Id.* at p. 62.) The court found that the imposition of drug-related conditions fell within the trial court's broad discretion to fashion conditions to aid the probation officer in ensuring that the probationer complied with the "fundamental probation condition[ ] to obey all laws." (*Id.* at p. 69.) Testing assisted the probation officer in monitoring the defendant's progress and provided information necessary to getting the defendant's life back on track. (*Ibid.*)

The probation report documents the deleterious impact substance abuse has had in Wyatt's ability to live a crime-free life. It notes that Wyatt suffers from "significant difficulty staying in compliance" with terms of probation or parole. He has absconded from supervision in the past, served three jail terms for violating probation and four " 'flash' incarcerations," and failed to complete directed programs. The report concludes that Wyatt has failed to take advantage of probation in the past and the prognosis for his rehabilitation is "poor" due to his unstable lifestyle. This provides further support for the

court's order of chemical testing to allow the probation officer to monitor Wyatt's substance use in hopes of rehabilitation.

Although Wyatt claims he does not consume alcohol, there is a well-established connection between alcohol and drug use. In *Beal*, the defendant "characterized herself as a social drinker, but did not consider alcohol use a problem." (*People v. Beal* (1997) 60 Cal.App.4th 84, 86-87, fn. 1 (*Beal*).) "It is well documented," the court found "the use of alcohol lessens self-control and thus may create a situation where the user has reduced ability to stay away from drugs. [Citation.]" (*Id.* at p. 87.)

Thus, the condition for chemical testing for drugs and alcohol is reasonably related to preventing future criminality and promoting rehabilitation. If a condition serves the "statutory purpose of 'reformation and rehabilitation of the probationer,' . . . it necessarily follows that such a condition is 'reasonably related to future criminality' and thus may not be held invalid whether or not it has any 'relationship to the crime of which the offender was convicted.'. . ." (*Balestra*, *supra*, 76 Cal.App.4th at p. 65, quoting *Lent*, *supra*, 15 Cal.3d at p. 486.)

Wyatt also objects to the court order that he participate in any treatment, therapy, or counseling, including residential treatment, as directed by probation. Psychological counseling and treatment may be ordered by a court where the social history of the probationer suggests that it may help to prevent future criminality. (*In re Todd L.* (1980) 113 Cal.App.3d 14, 20-21 [juvenile]; *People v. Petty* (2013) 213 Cal.App.4th 1410, 1417 [drug treatment program was an appropriate condition of probation for a defendant with mental health issues].)

As noted earlier, Wyatt admits he uses marijuana daily and has used methamphetamine on a weekly basis in the past. He was found with a "meth pipe" when he was arrested. This provides sufficient support for the trial court's order. It was reasonable for the trial court to conclude that treatment or counseling could benefit Wyatt in his rehabilitation and increase the likelihood of his successfully completing mandatory supervision.

Giving "proper deference to a trial court's broad discretion in imposing terms of probation, particularly where those terms are intended to aid the probation officer in ensuring the probationer is complying with the fundamental probation condition, to obey all laws" (*Balestra*, *supra*, 76 Cal.App.4th at p. 69), we cannot conclude the court abused its discretion by imposing the probation conditions at issue here.

## IV.

## DISPOSITION

The judgment is affirmed.

_____
RUVOLO, P. J.

We concur:

_____
REARDON, J.

_____
RIVERA, J.

8